LEWIS v. WHITTEN *et al., Plaintiffs in Error.*

Division One, November 28, 1892.

1. **Supreme Court Practice:** REGULARITY OF RECORD: PRESUMPTION. A record in another suit introduced in evidence but not preserved in the transcript certified to the supreme court will be presumed to be regular in the absence of any showing to the contrary.

2. **Sheriff's Sale :** DIVISION OF THE LAND: COLLATERAL ATTACK. A sale of land by a sheriff under execution without dividing it, when susceptible of such division, is not void and, therefore, subject to collateral attack.

3. **Parties :** FRAUDULENT CONVEYANCE. Where the prosecuting attorney of a county purchases land at an execution sale for the benefit of himself and the school fund, he is a proper party to bring suit to set aside a deed made by the execution debtor in fraud of his creditors.

*Error to St. Clair Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Neal & Duckworth* and *D. H. McIntyre* for plain-tiffs in error.

(1)   An alias execution issued without a return of the original execution is void.   The sheriff's deed, in order to have a *prima facie* character, should recite the return of the original execution unsatisfied, that the authority for the alias excution might be shown. *Dowsman v. Potter*, 1 Mo. 518; *Bailey v. Gentry*, 1 Mo. 164; 7 American & English Encyclopedia of Law, pp. 122, 123; Freeman on Executions [Original Ed.] sec. 49; Revised Statutes, sec. 2392.   (2)   The land was sold as a whole when it should have been sold in its smallest legal subdivisions.   Revised Statutes, sec. 2368.   (3)   The partial record of the proceedings of the State *v.* Robert Whitten was inadmissible.   The whole record should have been offered and the court should have excluded the partial record.   1 Greenleaf on Evidence [13 Ed.] sec. 201, and note.   (4)   When a transaction is as compatible with honesty as with dishonesty, it will be presumed to be honest. *Chapman v. McIlwrath*, 77 Mo. 38; *Henderson v. Henderson*, 55 Mo. 534; *Rumbolds v. Parr*, 51 Mo. 592; *Funkhouser v. Lay*, 78 Mo. 458; *Dallam v. Renshaw*, 26 Mo. 533.   (5)   A fraud that will vitiate a sale must be mutual. *Gordon v. Ritenour*, 87 Mo. 54; *Lewis v. Hopping*, 8 Pac. Rep. 73, and note to case.   (6)   In order to defeat the title of a purchaser from one who conveys land with a fraudulent intent, the vendee must have notice of the intent, or participate in the fraud. *Henderson v. Henderson*, 55 Mo. 534.   There must be tangible proof that the grantee participated; mere suspicion is not sufficient. *Hansmann v. Hope*, 20 Mo. App. 193.   (7)   Actual fraud must be proved—not conjectured.   Facts which give rise only to suspicion of its existence do not establish fraud. *Priest v. Way*, 87 Mo. 16.   (8)   The

possession of the farm by Whitten after the sale of the land by him to Elliott is not presumptive evidence of fraud. *Stewart to use v. Thomas, Adm'r*, 35 Mo. 202; *Gordon v. Ritenour*, 87 Mo. 54. (9) Where the vendor of property remains in possession of property as the lessee of the vendee his declarations are inadmissible against the vendee. *Gordon v. Ritenour*, 87 Mo. 54. (10) Declarations and admissions of Whitten were inadmissible to impeach his conveyance to Elliott. *Hambright v. Brockman*, 59 Mo. 52; *Meredith v. Wilkinson*, 31 Mo. App. 1; *Albert v. Besel*, 88 Mo. 150; *Buckman v. Montgomery*, 80 Am. Dec. 229. (11) Had a conspiracy been established between Whitten and Elliott to defraud the creditors of Whitten, the declarations of Whitten after the conveyance would have been inadmissible against Elliott. *State v. McGraw*, 87 Mo. 161; *State v. Fredericks*, 85 Mo. 145; *Laytham v. Agnew*, 70 Mo. 48. (12) Admissions made by a grantor in a deed after the sale are inadmissible in evidence to affect the title of the grantee, unless he assented to them, or they were made in his presence without objection. *Gutzweiler, Adm'r, v. Lackman*, 39 Mo. 91; *Stewart to use v. Thomas, Adm'r*, 35 Mo. 202; *Worley ex rel. v. Watson*, 22 Mo. App. 546. (13) The duty of R. E. Lewis, plaintiff, as prosecuting attorney of Henry county, was to prosecute the forfeited recognizance to judgment and enforce and collect said judgment for the benefit of the state and the school fund, and, if there was any cause of action against S. D. Whitten and James Elliott, it should have been prosecuted in the name of the state for the use of the school fund. Lewis therefore was not the proper party. Acts, 1881, p. 37. (14) Parties: A trustee of an express trust is created by writing; all who may be held to be trustees cannot sue in their own names. Bliss on Code

Pleading [1 Ed.] 54; Story on Equity Pleading [Redfield's Ed.] secs. 207, 209.

*John H. Lucas* and *Calvird & Lewis* for defendant in error.

(1)   The sheriff's deed contains all necessary recitals. Revised Statutes, 1879, sec. 2392; *Wilhite v. Wilhite*, 53 Mo. 71. The *alias* execution showed the return of the original execution unsatisfied.   (2)   The land was sold in the smallest legal subdivisions, as appears from the return of the sheriff on the execution. If it had been sold as a whole, such fact can only be taken advantage of by parties injured by motion or by bill in equity. *Fine v. Schools*, 30 Mo. 166; *Kelley v. Hurt*, 61 Mo. 463; *Bouldin v. Ewart*, 63 Mo. 330.   (3) The record of the proceedings of the State of Missouri *v.* Robtert D. Whitten and Stokley D. Whitten, upon the forfeited recognizance in Henry county circuit court, was offered in evidence by defendant in error and admitted.   (4)   Fraud, in equity, can be presumed from facts and circumstances. *King v. Moon*, 42 Mo. 551; 1 Story on Equity [12 Ed.] sec. 190; 19 N. W. Rep. 402; 13 N. W. Rep. 116; *Gallatin v. Cunningham*, 8 Cow. 361.   (5)   Where the vendor continues in possession, his acts and declarations are competent as characterizing the possession. *Mills v. Thompson*, 72 Mo. 367; *Railroad v. Clark*, 68 Mo. 374; *Darrett v. Donnelly*, 38 Mo. 492; *Stewart v. Thomas*, 35 Mo. 202; *Gordon v. Ritenour*, 87 Mo. 54, and cases cited; 9 Cent. Law Jour. 235; Abbott on Trial Evidence, 740.   (6) The declarations of Whitten, while in possession of the farm, were admissible against Elliott as characterizing the possession, and against Whitten for all purposes. (7)   No objection on that ground is made by Elliott, and that point is, therefore, waived as to him. *Pike v.*

*Martindale*, 91 Mo. 268; *Kellogg v. Malin*, 62 Mo. 429; *Butler v. Lawson*, 72 Mo. 247; Revised Statutes, 1879, sec. 3519; *Turner v. Lords*, 92 Mo. 113; *Church v. Kellar*, 39 Mo. App. 441. The testimony offered by plaintiffs in error to show that defendant in error was the trustee for the state of Missouri, or Henry county, which testimony was excluded by the court, was immaterial and irrelevant. For, admitting such to be the fact, defendant in error would thereby stand in the position of a trustee of an express trust (see Revised Statutes, 1879, sec. 3463), and would, therefore, be entitled to sue alone in his name. *Wright v. Tinsley*, 30 Mo. 389; *Buddington v. Mastbrook*, 17 Mo. App. 577, and cases cited; *Snider v. Express Co.*, 77 Mo. 523; *Miles v. Davis*, 19 Mo. 414; *Harney v. Dutcher*, 15 Mo. 93; *Phillips v. Laclede Co.*, 76 Mo. 69.

BRACE, J.—This is an action brought in the circuit court of St. Clair county by Robert E. Lewis, plaintiff, against Stokley D. Whitten and James Elliott, defendants, to set aside a deed executed by the said Whitten and wife, bearing date the fourteenth day of June, 1881, conveying a tract of land in said county to the said Elliott for the expressed consideration of $3,600, on the ground that said deed was made without consideration, and with the intent upon the part of said Whitten to hinder, delay and defraud his creditors, in which fraudulent intent the said Elliott participated.

The trial court so found, set aside and annulled the deed, and the case is brought here by the defendants on writ of error.

It appears from the evidence that, prior to the April term, 1881, of the circuit court of Henry county, a son of the said Whitten had been arrested for grand larceny in said county, which adjoins St. Clair on the north, and Whitten had entered into a recognizance to

the state of Missouri in the sum of $1,000 for the appearance of his son at the April term aforesaid, of the Henry county circuit court to answer such charge; that at said term the son was indicted for grand larceny, but failing to appear the recognizance was forfeited, and on the fourteenth day of June following the deed in question was executed. The tract conveyed contains about three hundred and fifteen acres of land, worth at that time between $4,000 and $5,000, situate in the northern part of St. Clair county, near the Henry county line; it was farming land except forty acres in timber. It had three houses on it, an ordinary frame dwelling, one and a half stories, a cabin and a small box house. At the time of the conveyance Whitten was living in the cabin, the main house being in the possession of a tenant to whom he had rented the place for a term ending March 1, 1882. Whitten was then aged about sixty years, somewhat infirm in health, with weak eyes, and not capable of doing much farm work. His family consisted of his wife, two boys who rendered him little assistance, and had become notorious as thieves, and some younger children. Besides his farming implements and household furniture, he had a wagon, two or three horses, several cows and calves and some hogs. It also appears that he was an applicant for a pension from the government, which he afterwards received, but when or how much does not appear; that there was a mortgage on the place amounting to $400, which was afterwards, with the interest, paid by Elliott, $40 of which seems to have been with money deposited by Whitten. But besides this mortgage debt the recognizance obligation, and a note of $100 to a firm of lawyers in Henry county retained for the defense of his son in the larceny case, it does not appear that he was otherwise indebted.

Defendant Elliott at that time was a farmer and trader in easy circumstances, living a few miles from Osceola, the county seat of St. Clair, and about twenty-two or twenty-three miles from the home of Whitten. He had formerly lived near Whitten's farm and been his neighbor, and they had been intimate friends and "chums" for many years when this conveyance was made.

A few days before it was executed Whitten came to the office of C. A. Calvird, in Clinton in Henry county, a member of the firm, who had been retained to defend his son on the criminal charge, had a talk with him about the forfeited recognizance and proposed to make him a conveyance of the land. This proposition Calvird declined, but told him he would go out and look at the land, and buy it from him if they could agree on terms. He accordingly went out to see it on the thirteenth of June, 1881, offered Whitten $10 per acre for the land, to surrender the $100 note of Whitten, which the firm held; fight the action on the recognizance free of cost; and give him $500 more if they succeeded in defeating it. Whitten agreed to come up the next day with his wife and talk it over. He did not come, and on the fifteenth of June Calvird went to see him, when he said to Calvird, "I went to Osceola yesterday and sold the place to Jimmy Elliott for the cash."

On the twentieth of December, 1881, judgment was rendered in the circuit court of Henry county in favor of the state of Missouri against Whitten on the forfeited recognizance for the sum of $1,000 debt and $3.50 costs.

On the first of March, 1882, Whitten's tenant moved out of the frame house, and Whitten moved into that house from the cabin and continued to reside there until April, 1885, when he moved to Kansas. During

this three years a part of the farm was cultivated by Whitten, but principally by tenants, one of whom moved into the small house when Whitten left it and continued there during the whole time that Whitten remained; the little box house was also at times occupied by a tenant. The rent was paid principally in a share of the crop raised, which was delivered to Whitten and by him disposed of; but, however paid, Whitten got it, and during this whole period he seems to have managed and controlled the farm, collecting the rents, selling and using its products, making improvements and repairs, contending for boundaries, and offering it for sale as if it were his own.

The sale to Elliott seems to have been made upon the spur of the moment, without previous consideration and without any reasonably fair pretext for such a deal between the parties. Elliott was living at a distance from the premises, engaged in a business for the purposes of which he needed all the money he had or could reasonably raise. He had no apparent use for this land for his own business, or as an investment. He must have known of Whitten's obligation to the state and his desire to defeat it. The deed was drawn by Elliott's attorney, and $700 of the recited consideration passed to the attorney by Elliott, by him counted and passed to Whitten, a note for $2,500 executed by Elliott to Whitten, and the deed delivered.

The defendants testify that between that date and Whitten's departure to Kansas in the spring of 1885, all the note except $300 was paid. Neither of them gives a satisfactory explanation of how or when these payments were made, and if Whitten retained this $700, and during the time he remained on the farm received the cash payments indicated, no appearance of the money is to be discovered in the payment of his debts, in his expenditures, or in his manner of living;

and when he left for Kansas he took with him personal property of about the same value as he had when the deed was made. And two years later, when his deposition was taken in this case in Kansas, just before the trial, he had about the same amount of personal property—$100 in money, and was living on an unproved government claim. Whitten in his deposition does not undertake to show how or when the payments on the $2,500 note were made, but says he lost the note while in Missouri at a circus; and before he left for Kansas he and Elliott had a settlement, and he gave him a note for a balance of $300, on which $100 had since been paid. When requested to produce this note he refused to do so.

Elliott in an application for a continuance at the term preceding the trial, on account of Whitten's absence, made affidavit that besides the mortgage he paid $3,300 for the farm; that the same was paid in cash at the time, and in a promissory note for the residue; that Whitten had the note in his possession, with the payments and the dates thereof indorsed thereon, and that all of it was paid except $400 or $500; that the affiant never kept accounts, but always saw to the fact of indorsements of payments on the note, and that from said indorsements he would be better able to show the amounts and dates of the payments. At the trial this affidavit was *missing*, and Elliott took the stand, and after a vain attempt to show specific payments on the note, and where the money came from, an account of which he claimed to have kept in a little book which he lost at some time while crossing the Osage river, fell into line with Whitten's deposition in regard to the consideration and the note, and testified that he had always trusted to Whitten to indorse the payments; that the note was lost and that he had had a settlement with Whitten before he left Missouri, and

had executed a new note for the balance of $300, of which all had been paid except about $140. A copy of the affidavit had prudently been preserved by the counsel on the other side, and its contents shown in rebuttal.

The declarations of Elliott in regard to this transaction, testified to by others, and the vague, unsatisfactory, contradictory and disingenuous manner in which he testified himself, show that the details of this transaction never dwelt in his mind with that certainty and distinctness that would characterize the remembrance of a *bona fide* transaction of this kind; while the many admissions and statements of Whitten, made while in a confidential mood during his possession of the farm, after the transaction, show directly, so far as he is concerned, that he was the real owner, and that the sale and deed to Elliott was a mere form, for his protection, and that should anything happen to him his wife had something to show its true character.

On the twenty-eighth day of January, 1885, an *alias* execution on the judgment in favor of the state against Whitten on the forfeited recognizance was issued to the sheriff of St. Clair county from the office of the clerk of the circuit court of Henry county, and, on the third of March, 1885, the land was sold by virtue of such execution by said sheriff. At that time the plaintiff, Robert E. Lewis, was the prosecuting attorney of Henry county. At the sheriff's sale he became the purchaser thereof, being the highest bidder at the price and sum of $434; and on the same day the said sheriff duly executed and acknowledged his deed conveying said land to the plaintiff, in consideration of said purchase price, the receipt of which he therein acknowledged; and on the fourteenth day of March, 1885, this suit was commenced.

I.   On the trial objection was made to the admission of the sheriff's deed in evidence, on the ground that its recitals did not show that the original execution had been returned not satisfied, and because they showed that the land had been sold "as a whole."   The sheriff's deed contained the recitals required by the statute, and was admissible in evidence.   If the original execution had not been returned unsatisfied the record of the proceedings in the case which was at the time introduced in evidence by the plaintiff would have so shown. These proceedings have not been inserted in the record which the plaintiff in error brings here.   The defendant in error insists that the record did show that the original execution was returned not satisfied.   It is to be presumed that the record did so show, and that the proceedings were regular in the absence of any showing to the contrary.

As to the second ground of objection which goes to the validity of the sale, it is only necessary to say that while the sheriff is required to divide real estate to be sold under execution when it is susceptible of division, and to sell only so much thereof as is sufficient to satisfy the execution, and if he fails to do so the sale is irregular and may be set aside in a direct proceeding for that purpose, yet the sale is not void, and cannot be questioned in a collateral proceeding for such irregularity.   *Bouldin v. Ewart*, 63 Mo. 330, and cases cited.

It may be added, in this connection, that the validity of the execution and the sale in this case was directly attacked by one of the defendants on the return of the execution by a motion to set the sale aside, which motion was overruled by the circuit court, and on appeal to the Kansas City court of appeals the action of the circuit court was affirmed.   *State v. Whitten*, 23 Mo. App. 459.   As this affirmance was had before the trial of this case, and the record of the proceedings in

the circuit court had been introduced in evidence by the plaintiff, it is not seen how the bill of exceptions offered in evidence by the defendants and rejected by the court could have had any bearing upon the issues to be tried.

II. It is urged for reversal here that the court erred in admitting in evidence declarations and admissions of the defendant Whitten. The examination took a wide range and seems to have been conducted with infinite patience in the course of which occasionally general objections were made to evidence offered by the plaintiff and the objections overruled, but no exceptions saved, and the evidence taken subject to objection, and no subsequent ruling asked for or made. The whole examination was evidently conducted on both sides upon the theory and understanding that the court would hear the evidence, properly discriminate between that which was legal and pertinent and that which was not, and give the whole evidence its proper weight in his own mind in making up his judgment. And this is the course we have to pursue in determining the main point in the case.

III. The defendant Whitten in his answer alleged that the plaintiff was the attorney for the state of Missouri, paid nothing for his purchase and is holding the same as trustee for the state; and on the trial offered to prove that the "plaintiff was the prosecuting attorney of Henry county, Missouri, from the first of January, 1883, to the first of January, 1887; while acting as such prosecuting attorney he came to the city of Osceola, attended the sale of the land in controversy under the forfeiture of the bond, bid in the land; that the plaintiff did not and never has paid the amount of his bid into the school fund of Henry county; that plaintiff did not and never has executed to Henry county any bond or agreement to the school fund of

said county, making good his bid; that the plaintiff was not a purchaser of the land in controversy for a good and valuable consideration; that he never paid anything on his said bid, nor secured the same by bond or otherwise; that he was not the authorized agent of Henry county for the purpose of bidding said land in; that he had no appointment or authority in writing; that the plaintiff bid said land off and took the deed in his own name."

So far as this evidence tended to contradict the sheriff's return, it was inadmissible. The object of the offer, however, seems to have been to show (and it is so argued here) that the plaintiff is not the real party in interest and, therefore, cannot maintain this action. This point is not well taken. The whole object of this suit is to set aside an alleged fraudulent deed to land, the legal title of which is vested in the plaintiff, if the allegation of fraud is shown to be true. It does not follow because the plaintiff, owing to the official relation he sustained to the state, to the county of Henry, and its school fund, at the time of the purchase, after being reimbursed for the amount he expended in securing the title and compensation for his services as such official, will hold the title to the land in trust for the benefit of the school fund of Henry county, that he is not the proper party to sue. The purchase was made for his own benefit to the extent of such reimbursement and compensation, and for the benefit of the school fund to the extent of the remainder. This purchase was a contract made by the plaintiff in his own name for the benefit of himself and the school fund, and he is the proper party to sue in this action, not only for the protection of his own individual interest, but also that, as trustee of an express trust within the definition of the statute in a contract made in his own name for the benefit of another, he may be enabled to dis-

Lewis v. Whitten.

charge his obligation to the *cestui que trust* for whose benefit the purchase was also made.

IV.   We come now to the consideration of the main question, and that is, whether the finding of the circuit court is supported by the legal evidence in this case.

After going patiently through this voluminous, unindexed, indistinct, disjointed and in many places almost illegible record, and carefully considering only the legal and pertinent evidence therein contained, we cannot say that the conclusion reached by the trial judge was incorrect.

It would not be profitable to incumber this opinion by an attempted synopsis of the mass of evidence; which we have found it necessary to sift in order to get a proper appreciation of its force as a whole, but content ourselves with saying that the consideration of that evidence in all its bearings, after making all reasonable presumptions in favor of honesty and fair dealing, leaves the mind ineradicably impressed with the conviction that this sale was a sham concocted between these two defendants, for the purpose of defeating the collection of the forfeited recognizance, and that the learned and practical judge, who tried this case with so much patience and evidently with the earnest desire to get at the very truth of the matter, truly discerned the character of the transaction from the more advantageous position afforded him by a knowledge of the parties, and of the witnesses, and their manner and conduct during the trial.

The judgment is affirmed.   All concur.