WILLIAM SHELTON v. J. E. FRANKLIN, Appellant.

**In Banc, December 21, 1909.**

1. **CONSTITUTIONAL LAW: Local: No Objection at Trial.** The constitutionality of a special or local law, making Carleton's Abstracts evidence, offered as a link in the testimony, will not be considered on appeal, unless objection was made to it when the offer was made.

2. **TESTIMONY: No Objection.** Assigned error in the admission of entries in Carleton's Abstracts as links in respondent's chain of title will not be considered on appeal, unless objection to their admission in evidence was made at the time they were offered, and an exception saved to the ruling of the court.

3. **CHAMPERTY: Costs.** A contract of employment, authorizing an attorney to recover all lands of plaintiff he could and agreeing to pay him for his "services one half of the land recovered," with nothing said or understood as to paying costs, is not champertous, although the attorney testified that, knowing plaintiff to be good for the costs, he made the cost bond.

4. **QUIETING TITLE: Collateral Attack on Deed: Theory at Trial.** Where both sides by their pleadings and at the trial treated the petition as a direct attack upon the tax deed, it will not on appeal be considered a collateral proceeding.

5. ————: **Commingling Causes: No Demurrer: Waiver.** Where there is in the petition and prayer a commingling of things usually stated in a petition under section 650, Revised Statutes 1899, to quiet title, and what may be called matters of allegation usually stated in an equitable action to quiet title or to remove a cloud upon the title, the defect is patent on its face and it is subject to demurrer, and if no demurrer is filed the defect is waived.

6. ————: **Attacking Sheriff's Deed.** The sufficiency of the sheriff's deed in the tax sale may be attacked by a direct proceeding in equity, and where the petition, aided by the answer, may be after judgment held to be sufficient as a bill in equity to have the deed cancelled, the case will be disposed of as a direct proceeding attacking the sheriff's deed.

7. ————: ————: **Subsequent Grantee: Notice.** Notice of the unlawful and wrongful conduct of the sheriff in selling the lands for taxes should be brought home to a subsequent grantee of the purchaser at the sheriff's sale.

8. ————: ————: **Attacking Judgment.** A party applying to a court of equity for the cancellation of a sheriff's deed is not necessarily required to attack the validity of the judgment. He may attack the validity of the sale and deed, although there be a valid judgment.

9. ————: ————: **Timely: Alleging Notice.** But a bill to have the sale set aside should be filed within a reasonable time after the judgment debtor becomes informed of the wrongful act of the sheriff; and if brought against a subsequent grantee of the purchaser at the sheriff's sale it should allege that the said grantee had notice of the alleged wrongful acts of the sheriff, for without such notice he becomes an innocent purchaser.

10. ————: ————: **Sale in Mass: Voidable.** A sheriff's deed, selling land for taxes, in mass, when susceptible to division, is not void, but only voidable; nor can the deed itself be held to sufficiently show a sale *in solido*.

11. ————: ————: **Necessary Showing.** To have a sheriff's deed set aside on the ground that he sold the land in mass, it is necessary for plaintiff to show, first, a sale *in solido;* second, that such a sale was an abuse of the discretion lodged in the sheriff; third, consequent damages and injury to the judgment debtor; fourth, a seasonable application for redress; and, fifth, if the suit is against a subsequent grantee of the purchaser at the sheriff's sale, knowledge and notice on his part of the sheriff's wrongful acts.

12. ———: ———: **Separate Sales: United in One Deed: Presumption.** Where the statute required that the lands be sold by separate tracts, the presumption is that the sheriff did his duty and so sold them; and this presumption is not overcome by a recital in the deed, that the separate parcels were bid for and sold to one and the same purchaser. Uniting the tracts in the deed does not even raise a presumption that they were not sold separately. Of itself it is no evidence of a sale in mass.

13. ———: ———: **No Execution: Not Pleaded.** Where the pleadings are construed to be a direct attack upon the sheriff's deed, it will not be decided whether or not there was an execution issued under which levy and sale were made, unless plaintiff pleads an absence of execution as a ground of the deed's invalidity.

14. ———: ———: **Levy: Date: Surplusage.** A recital in the deed of the date upon which the execution was levied is not required by the statute, and is, therefore, surplusage; and being such, a recital showing a sale prior to levy, will not be held to invalidate the deed.

15. ———: **Bill in Equity: Examination of Evidence.** Where plaintiff's petition is construed to be a bill in equity to cancel a sheriff's deed, and not a collateral proceeding, the appellate court will examine the evidence and reach its own conclusions as to what should be the decree.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED (*with directions*).

*John A. Hope* and *Martin L. Clardy* for appellant; *Oliver & Oliver amici curiae.*

(1)   Plaintiff failed to show that he ever had any title to the land. Under the evidence the title is still in the Government. He introduced certain entries in "Carleton's Abstract," but these entries do not prove that plaintiff ever had any title, for these reasons: (a) The act authorizing "Carleton's Abstract" to be received in evidence, approved March 28, 1901, was the only foundation on which the entries were offered. The act being a special and local law, "changing the rules of evidence," etc., is unconstitutional; hence, the

abstract entries proved nothing. Laws 1901, p. 251; sec. 53, art. 4, Constitution 1875. (b) Even if the abstract law had been valid, the entries were not verified as required by it; without this verification they were inadmissible and prove nothing. Laws 1901, p. 251. (c) But even if the Abstract had been duly verified, and the act under which the entries were offered could be held valid, the entries would still be secondary evidence, and would not prove that the title had ever passed from either the United States or the State because better evidence exists. The fire that destroyed the Pemiscot county records did not, as the learned trial court seems to have believed, destroy the public land records at Jefferson City and Washington. These records show to whom Pemiscot county lands were originally conveyed, and so long as they exist, no entry in "Carleton's Abstracts," although duly verified and made evidence by statute, can prove a conveyance from either the State or the United States. (d) Again, even if it had been shown that the Government's title passed to the county, the abstract entry of the patent from the county to George W. Carleton, through whom plaintiff seems to claim, proves nothing, because the entry shows on its face the existence of better evidence, namely, the record of the patent made on October 1, 1885, long after the destruction of the records. Stewart v. Lead Belt Co., 200 Mo. 281. (2) If plaintiff ever had any title, it was closed out and vested in William Hunter, defendant's grantor, by the sheriff's sale under the judgment for taxes rendered by the Pemiscot Circuit Court against plaintiff for delinquent taxes on the land. The order of publication, and proof of publication, by which the court acquired jurisdiction in that case, were legal and regular. But plaintiff says the deed the sheriff made to Hunter pursuant to the sale under execution issued upon the judgment is void, because the sheriff sold it in one tract of eighty acres, instead of dividing and selling it in two

tracts of forty acres each, and the court adjudged the deed void on that ground. This ruling is erroneous for these reasons: (a) There is no evidence in the record showing, or tending to show, that the sheriff did not sell the land in subdivisions. We have nothing but the deed itself, and it was introduced, not by plaintiff, but by defendant. The deed does not prove that the sheriff sold the land as one tract. On the contrary, the presumption is that in selling the land the sheriff did his duty, complied with the statute, and having sold it to Hunter in subdivisions, conveyed it all to him by one deed. Mathias v. O'Neill, 94 Mo. 526; 1 Cooley on Taxation (3 Ed.), p. 447; Stieff v. Hartwell, 35 Fla. 609; Crieman v. Johnson, 23 Colo. 254; Towle v. Holt, 14 Neb. 221. (b) But if the evidence had established that the sheriff did in fact sell the land to Hunter as one tract, that would not render the sale and sheriff's deed void. The law applicable to this phase of the case is set forth in defendant's declarations of law numbered 2 and 4; the refusal of these declarations proves that the trial judge ruled in this case that when a sheriff sells land under execution, unless it can be affirmatively shown that he sold it in subdivisions, the sale is not merely voidable, but void, as against not only the purchaser at the sheriff's sale, but any subsequent grantee of that purchaser. Having conceded that defendant, in purchasing from Mr. Hunter, acted in good faith, the ruling in this case that an execution sale of land without subdivision is void at all times and against any remote grantee is one of the "new things under the sun." Until this ruling, it seems to have been settled law that failure of the sheriff to subdivide the land was merely an irregularity which might render the sale voidable, but not void, and that the sale would not be set aside, on account of any such irregularity, in a collateral proceeding against one who had purchased in good faith from the grantee in the

sheriff's deed.  Morrison v. Turnbaugh, 192 Mo. 444;
Jones v. Driskell, 94 Mo. 198; Yeamen v. Lepp, 167
Mo. 61.  And if plaintiff ever had a right of action to
set aside the sheriff's deed there is plenty of author-
ity for holding him barred by his long silence and
delay as set forth in defendant's answer and declara-
tion 6, and as shown by the facts and circumstances
in the case.  1 Pomeroy, Eq. Jur. (3 Ed.), secs. 418-
19, pp. 695-98; Morrison v. Turnbaugh, 192 Mo. 447;
Dexter v. McDonald, 196 Mo. 400; Underwood v. Du-
gan, 139 U. S. 380; Morgan v. Horsky, 178 U. S. 205;
Turner v. Burke, 99 S. W. 76; Osceola Land Co. v.
Henderson, 100 S. W. 896.   (3)   This is not a pro-
ceeding in equity.  No grounds for equitable relief are
stated.  It is a suit in which the plaintiff claims "ti-
tle, estate and interest in real property" by reason
of legal rights alone, and it is, therefore, a suit at
law, and is brought under section 650, Revised Stat-
utes 1899, by which it is not meant to say that a suit
based on equitable rights may not be maintained un-
der that section, but simply that the plaintiff in this
case has not averred, proved or attempted to prove
any fact which entitles him to relief in equity.  After
alleging that the deed is void, the petition states the
reasons: 1.  That the sheriff did not divide the land
and sell only so much as would be sufficient to satisfy
said taxes and costs, but sold the lands in bulk, and that
the lands could have been divided into two tracts of
forty acres each.  2.  That the deed did not state the
amount of taxes for the different years for which the
same was sold.  3.  That the deed is void because it
shows on its face that no levy was ever made.  Re-
spondent, it is clear, relies in his petition upon what
he assumes to be the defects in the deed as shown by
the deed itself.  If he does not err as to his inter-
pretation of the law, he could recover in an action
of ejectment if he can recover at all.  If the deed is
void on its face, as he contends, it could not stand in

the way of a recovery. In a sense, it is true that both parties treated this proceeding as one impeaching the deed, but, so far as the respondent is concerned, he relied upon what he called the irregularities of the deed as entitling him to relief. He asserted no equities in his petition, and he offered no evidence to prove any equities.

*C. G. Shepard, Sam J. Corbett* and *Duncan & Bragg* for respondent.

(1) Appellant for the first time makes the contention in this court that Carleton's Abstract was not competent evidence and did not prove the facts therein recited, and that as to the evidence in this case the title to the land in question yet remains in the Goverment. There being no objection made to the introduction of the evidence at the trial of this cause, this objection comes too late at this time; and further, it was shown at the trial of this cause that both plaintiff and defendant claimed through the same common source of title. Appellant cannot now deny the source of title through which he claimed at the trial. (2) The learned counsel for appellant seems to misunderstand the contentions of respondent and the finding of the court as to the question of the land not being divided and sold in its smallest legal subdivision. The claim of respondent is that such sales will be set aside on timely motion made for that purpose, or by direct proceeding in equity for that purpose, and that this is a direct proceeding in equity attacking the sale of the land for that reason. This court has frequently held that sheriffs in selling the land under execution should divide the land, when susceptible of division, and sell only so much thereof as was necessary to pay the execution and cost, and has repeatedly held that while such failure on the part of the sheriff did not make the sale void, yet the sale would be set aside on timely

motion to that effect or on a direct proceeding in equity for that purpose. Yeamans v. Lepp, 167 Mo. 61; State ex rel. v. Elliott, 114 Mo. App. 562; Corrigan v. Schmidt, 126 Mo. 304; Gordon v. Heckman, 96 Mo. 350. The learned counsel for appellant, realizing the force of this contention, seeks to evade the proposition on the theory that the appellant is an innocent purchaser without notice, and on the ground that the suit was not timely brought, and was not brought against the purchaser at the tax sale. Such a procedure would give the cunning and the trickster a chance to defraud the honest citizen out of his rights in a manner unknown to equity or to justice. Such is not the law, neither is such common sense. Corrigan v. Schmidt, supra; Black on Tax Titles, sec. 401. (3) Appellant claims there was no evidence to the effect that the land was sold in bulk. The deed itself is evidence of that fact, and shows conclusively that the land was sold in one body to one person for one price. Sec. 3210, R. S. 1899. This section requires the sheriff's deed to recite the place and manner of sale. What is meant by "manner of sale" unless it be the way the steps or the mode pursued by the sheriff in making a sale? It has ever been held by this court as well as by the courts of last resort in most of the states that the recitals in a sheriff's deed were evidence of the manner in which the land was sold; and that if the land was divided and sold in parcels the deed should recite the necessary facts to show such division and the amount each division sold for. State ex rel. v. Richardson, 21 Mo. 420; Keene v. Barnes, 29 Mo. 384; Smith v. Williams Cooperage Co., 100 Mo. App. 153; Barnes v. Beardman, 3 L. R. A. (Mass.) 786. Defendant in his answer in the trial court admitted that the land was so sold (in bulk), and cannot now question his admissions made on the trial of this cause. 17 Ency. Pl. & Pr. 353. We do not dispute the proposition that a

purchaser at a tax sale can have several different tracts of land conveyed in the same deed, and the conveyance be valid; but it seems to us that each tract of land should be separately described. The words "manner of sale" as used in our statute certainly refer to the method of proceeding, that is, the way in which the land was sold. In numerous cases, even where there was no statute requiring the sheriff to divide the land, it has been held that such a sale was such a fraud upon the rights of the owner of the property that he or anyone claiming under him may have the sale declared void. Roser v. Loan & Trust Co., 118 Ga. 181; Starr v. Shepard, 108 N. W. 709; Stark v. Cummings, 56 S. E. 130; Williamson v. White, 28 S. E. (Ga.) 846; Jungk v. Snyder, 78 Pac. 168; Life Insurance Co. v. Smith, 117 Mo. 293. A subsequent purchaser takes with all the notice the records impart, and subject to the knowledge to be gleaned from the records. Martin v. Barber, 140 U. S. 634. Respondent claims that even should it be conceded that the land was divided as the law requires and sold in subdivisions, or should it be conceded that there is no proof to show the manner in which said land was sold, yet the judgment of the learned trial court must be sustained for the reason of the errors and omissions as shown by the sheriff's deed introduced in this cause. (a) The tax deed is a mere skeleton in form and fails to show the amount of taxes for each year for which it was sold. The intention of the law can be nothing else than that while the collector is allowed to recover judgment in one suit for the taxes due for several years, yet his tax bill must show the amount due for each year and the judgment must recite that fact, and the tax deed must make the necessary recitals from the judgment. Guffey v. O'Riley, 88 Mo. 424; Hopkins v. Scott, 86 Mo. 140. (b) The sheriff's deed in question fails to show a levy on the land by the sheriff. The sheriff has no jurisdiction over the *res* until a levy is made, and an

attempt on the part of the sheriff to sell the land in question without first making a levy as the law requires was without authority, and a sale thereunder absolutely void. Duncan v. Matney, 29 Mo. 368; Childers v. Schantz, 120 Mo. 305; Western v. Flanagan, 120 Mo. 61; Hopke v. Lindsay, 83 Mo. App. 85; State v. Sargent, 12 Mo. App. 228; Bush v. White, 85 Mo. 339; Ware v. Johnson, 55 Mo. 500. (4) Instructions have no place in equity proceedings.

GRAVES, J.—This case reached the Court in Banc on an opinion filed in Division One by the writer, which opinion was concurred in by all the judges then present. Motion for rehearing was filed and upon consideration the writer was considerably shaken in the views he had expressed in the divisional opinion and the motion was sustained and the cause sent to the Court in Banc, on account of the grave character of several questions passed upon in the divisional opinion, and to the end that further light might be gathered from a reargument of the case.

In course of time it was reargued and submitted and after consultation again assigned to the writer for disposition. Since said time, however, several other cases involving similar questions have been argued. The facts necessary to a disposition of the case are brief, although the case is bristling with points. Going to the facts:

The petition up to a certain point is the usual one filed under section 650. By this we do not want to be understood as condemning this form of petition. After alleging that plaintiff is the owner in fee simple of the property, and that defendant claimed some adverse interest, the petition then avers:

"That the defendant claims some title, estate or interest in and to said premises, the nature and character of which claim is unknown to plaintiff, and can-

not be described herein; unless it be that defendant claims through a certain sheriff's deed for taxes, dated the 10th day of September 1897, and recorded in Book A at page 101, of the deed records of Pemiscot county, Missouri.

"Plaintiff further states and avers that said tax deed should be held void and of no effect for the following reasons: Whereas, the law commands the sheriff, when selling lands for taxes, to divide such land and sell only so much thereof, as will be sufficient to satisfy said taxes and costs, the sheriff wholly disregarded his duty in selling said lands, and failed to divide said lands as he was by law commanded, but sold all of the above lands in bulk for the sum of thirty-seven dollars. That the amount of taxes against said lands were only $4.66, and that said lands were susceptible of being subdivided into two divisions of forty acres each, either of which subdivisions would have brought more than said taxes together with the interest and costs of said suit. Plaintiff further states that said lands at date of sale by said sheriff, were reasonably worth the sum of eight hundred dollars, and had said sheriff complied with the law in making said sale and have sold only one subdivision of said land, there would have been left to plaintiff one-half of said land after the taxes, interest and cost had been paid out of the subdivision so sold.

"That said deed should be held void for the further reason that said deed does not state the amount of taxes for the different years for which the same was sold.

"Plaintiff further states that said deed should be held void for reason that it shows upon its face that no levy was ever made on said lands prior to the date of the pretended sale.

"Plaintiff here and now offers to pay to defendant, J. E. Franklin, by him or his grantors paid for said lands, at said sheriff's sale, together with whatever

taxes they have paid on said lands, with interest thereon since the date of said sale.''

Prayer is in usual form to ascertain and determine title, save and except that it asks for the cancellation of the sheriff's deed mentioned as aforesaid.

By answer the defendant denies generally the charges of the petition and avers the ownership of the land to be in him. There are also specific answers as to the charges made against this sheriff's deed, and further allegation as to the good faith of the defendant as the purchaser from William Hunter, the purchaser at the tax sale. The answer further pleads estoppel in that great permanent and valuable improvements had been by him made, with the knowledge of plaintiff. The next substantial portion of the answer charges that this suit is being prosecuted under a champertous contract.

Replication, general denial.

The trial resulted in judgment for plaintiff as to the title to the land and specifically as to the cancellation of the sheriff's deed aforesaid. Also decreed that defendant was entitled to lien for $53.76 taxes paid. From such judgment, appeal was duly taken, and thereby the troubles are here. The evidence so far as required, will be noted in the consideration of the points made. Thus far, this sufficiently states the case.

I. (a) The first question urged by appellant is the invalidity of a legislative act approved March 28, 1901, which act authorized entries made in ''Carleton's Abstracts'' to be used as evidence of title in Pemiscot county. This act is challenged as being violative of that portion of section 53, article 4, Missouri Constitution of 1875, which provides: ''The General Assembly shall not pass any local or special law . . . changing the rules of evidence in any judicial proceeding or inquiry before courts,'' etc. The act complained of

was passed in strict conformity with the terms of section 54, article 6, of the Constitution, which prescribes the method of enacting local or special laws. It is urged that the Federal Court of the Eastern Division of the Eastern District of Missouri has held said statute violative of the provision above quoted, and that the bar of Southeast Missouri have so recognized this unconstitutionality and that to obviate this unconstitutionality and recognizing this unconstitutionality, the Legislature passed a general law in 1907 to meet the emergency of this special law. Laws 1907, p. 271.

The plaintiff offered this special law in evidence and it was admitted without objection. The unconstitutionality thereof was not urged in the court below and is raised for the first time here. The question should have been urged when the law was offered, as objections are made to other classes of evidence. This local law was but a link of testimony. For this reason the constitutionality of that act is not before us in this record.

(b)  A further sufficient answer would be that the abstract of record fails to show that appellant made any objections to the entries from Carleton's Abstracts being read as evidence of title in the case. Having been read for the purpose of showing title, and no objections made or exceptions saved at the time, such objection comes too late when made for the first time in this court. The plaintiff, as appears from the abstract of record, offered in evidence this Act of 1901 and no objection was made as to its admission in evidence. But, be this latter as it may, when appellant permitted the respondent in making his case of title to read seven entries from Carleton's Abstracts showing a perfect chain of title from the Government to respondent, without objection, he is certainly estopped here. Both sides were then proceeding upon the theory that such entries were evidence of title. By this theory they are bound in this Court.

II. Another charge and complaint made by appellant is that the suit is being prosecuted under a champertous contract. There seems to have been some correspondence between respondent and C. E. Bragg concerning this and other lands which he claimed to own in Pemiscot county. Of this correspondence only one letter found its way into the record. This letter reads:

"October 10, 1904. Stamford, Ky. Dear Sir: In reply to your favor of October 7th I authorize you to recover all you can of my lands in Pemiscot county, Mo., and I agree to pay you for the service one-half of the land you recover. Very truly yours, etc. Wm. Shelton."

One other letter was found but being dated after the employment of counsel the claim that it was a privileged communication was interposed and sustained. From the evidence it appears that counsel for respondent made the cost bond given at the institution of the suit, and Mr. Bragg, who was called by the appellant as a witness, said that they made the bond for their client, because they knew that he was good for costs. That they had made similar cost bonds for clients in perhaps a hundred other cases. Bragg further testified that there was no correspondence whatever in regard to the costs. This is the evidence upon this question. Under such evidence the trial court could not have held the contract champertous, even if it be said that champerty in a contract not involved in the suit could affect the case. Concede that there was champerty in the contract of the employment of counsel, could such affect the real issues of the case? We leave our own query unanswered, because of what we first stated, i. e., that under the evidence this contract is not champertous.

III. A vital question in this case is the validity of the tax deed. Respondent contends that by his petition there is made out a direct attack upon this tax

deed, whilst appellant proceeds, in this court, upon the theory that the attack upon the tax deed is in a collateral proceeding. It will be observed that the petition does charge that this tax deed should be held void, and assigns some three reasons therefor. The answer avers among other things that if the sale was in fact made in bulk, "such sale did not and does not render the same invalid nor entitle plaintiff to have it set aside, because the said purchase price of $37 was more than said land was worth at the time of said sale. That said land could not have been subdivided and sold at that time for more than $37 nor for more than the taxes and costs adjudged against it in said tax proceedings. That said land, whether sold in subdivisions or as one tract, was not worth more than the amount of said taxes and costs and could not and would not, have sold for more than said $37."

It then appears that both parties introduced evidence upon the question of value. From this and other portions of the answer and from the conduct of the parties upon the trial, it clearly appears that both parties treated this action as one directly attacking the tax deed. Thus in one part of the answer the defendant says: "Answering further, defendant says that he is now, and was at, and long prior to, the beginning of this suit in actual possession of said land, and that if plaintiff has any claim thereto, he has an adequate remedy at law, and has no right to maintain this suit in *equity*, and defendant again prays judgment." In another portion it is said: "and further that there is a misjoinder of causes of action in plaintiff's petition, in that he has intermingled in the same petition and in one count thereof pretended actions to remove a cloud on his alleged title, to set aside said tax sale, and also statutory action to quiet title."

Having so treated it below, the case most proceed here upon that theory. It is true that the failure of a petition to state any cause of action at all may be,

as has been held, raised for the first time here. It is not contended here that a cause of action of some kind cannot be gathered from this petition, but appellant says that it is under section 650 and is not a direct proceeding. Respondent contra.

There is in the petition and prayer a commingling of things usually stated in a petition under section 650 and what might be called matters of allegation usually stated in an equitable action to quiet title, or to remove cloud from title.

Defendant did not demur to this petition. Nor by motion was it attacked. The defect was patent upon the face of the petition. In one clause of the answer it urged that there is a commingling of two causes of action in one count of the petition. This should have been raised by demurrer and not by answer. A failure to demur waives the question.

The petition as a bill to remove cloud from title is to say the least exceedingly scant. It does not charge actual collusion and fraud as in Yeaman v. Lepp, 167 Mo. 61, and Gordon v. O'Neil, 96 Mo. 350, but it does charge the unlawful act of the sheriff and consequent injury. The petition as a bill to cancel the deed, whilst probably not sufficient if it had been attacked below, is we think sufficient after judgment in view of the answer which in a way aids the bill.

We shall therefore proceed upon the theory that this is a direct proceeding attacking this sheriff's deed. There are two lines of cases in this State, one holding as appellant contends, that this deed cannot be attacked in a collateral proceeding, or rather that it might be sufficient in a collateral proceeding. The other line holds that the sale and deed made thereunder are subject to attack and review, either upon a motion, in the original suit, to set aside the sale, or in a direct proceeding to set aside the deed. The authorities cited by appellant are of the former class, those by respondent of the latter class. It is urged that the judg-

ment is good, and this may be granted. The present proceeding does not attack the judgment, but only goes to matters and things occurring after the judgment.

In the case of Yeaman v. Lepp, 167 Mo. 1. c. 72, we said: "Counsel for defendant cite Rector v. Hartt, 8 Mo. 448; Bouldin v. Ewart, 63 Mo. 330 and Lewis v. Whitten, 112 Mo. 318, as authority for the claim that the provision of the statutes requiring a sheriff to subdivide a tract of land sold under execution based upon a general judgment or upon a special judgment for taxes is only directory, and contend that the failure of the sheriff to comply with the statute in this regard does not render the sale void, or affect the title of the purchaser. Those cases, and others that might be cited, do hold that such violation of duty by the sheriff does not render the sale void so that the title conveyed by the sale can be attacked collaterally, but those cases also hold that the sale may be attacked directly either by a proper motion at the proper time in the court that rendered the judgment and while the matter is still within the control of the court, or by a bill in equity, and in this way the sale may be set aside. This is a direct proceeding in equity, and hence is within the rule."

In a case attacking the sale by motion in the original case, State v. Elliott, 114 Mo. App. 1. c. 566, the Kansas City Court of Appeals through ELLISON, J., said: "Moreover, it is apparent from the opinion of MARSHALL, J., in Yeaman v. Lepp, supra, that, under the circumstances in this case, the sheriff should not have sold the entire twenty acres of land. It was his duty to sell the twenty acres 'or so much thereof' as would satisfy the judgment and costs. The case, just cited, arose under the statute of 1889; but, as that and the present statute of 1899 are alike in the respect here considered, what is there said applies to the present statute. Besides, by reference to the judgment and execution, the sheriff was only authorized to sell so much

of the land as would satisfy the judgment. The result is that we will reverse the judgment and remand the cause with directions to the trial court to set aside the execution sale.''

The same doctrine is announced in the following cases: Corrigan v. Schmidt, 126 Mo. 304, and Gordon v. O'Neil, 96 Mo. 350.

Defendant Franklin pleads that he purchased for a valuable consideration and bought in good faith with no knowledge of the alleged defects in the tax proceeding, thus aiding a defect in the bill in this regard. He, however, does not take the stand as a witness upon this question. In fact there is no oral evidence on the question. The sheriff's deed was on record and was a link in the chain of defendant's title. Plaintiff claims this gave defendant notice of the delinquencies of the sheriff. Even if this be true, a point we discuss later, yet it wouldn't give notice of any consequent damages to the plaintiff.

It is true the trial court at the request of defendant gave this instruction:

''The court further declares that there is no evidence in this cause of bad faith on the part of defendant and that it will be presumed that defendant's purchase of and claim to own said land, was and is in good faith.''

Instructions have no place in equity cases, and this court is not bound thereby. This declaration says, however, that there was no evidence of bad faith, but says nothing about what knowledge or notice the defendant may have had of the alleged defects in the tax proceeding. Defendant being a subsequent grantee and not the purchaser at the tax sale, notice of the unlawful and wrongful conduct of the sheriff should have been brought home to him. [Corrigan v. Schmidt, 126 Mo. 304; 2 Freeman on Executions (3 Ed.), p. 1709.]

IV.  Whilst we have said that, owing to the conduct of the parties in the trial; the statement of the defendant in his answer; the failure to attack the petition prior to trial and judgment; the slight aider from the answer, the petition would be held good after judgment, we do not say it would be good as against an attack made at the proper time and proper manner. The parties below treated it as a proper bill for the cancellation of the deed and upon that theory we try it here.

But treating it as a good bill in equity for the cancellation of the deed, how stands the case?  I do not understand that the party applying to a court of equity for the cancellation of a deed under execution, necessarily has to attack the validity of the judgment. He can attack the validity of the sale and deed although there may be a valid judgment.  This attack of the sale may be by motion at the term, or by a bill in equity filed later.  This bill in equity, being in the nature of a motion to set aside the sale, should be filed within a reasonable time after the judgment debtor becomes informed of the wrongful act of the sheriff.  If brought against the purchaser at the sale it need not allege notice of the fact that the property was sold *in solido* because such notice would be presumed, 'but if brought against a subsequent grantee it should allege that the said grantee had notice of the alleged act of the sheriff, for without such notice he becomes an innocent purchaser.

Now in this case it is urged that there is no testimony to the effect that this sale was made *in solido* and therefore the case should be reversed.  This is true unless it can be said that the deed itself shows such fact.  In division, following a case from Massachusetts, Barnes v. Boardman, 3 L. R. A. l. c. 787, we held that the deed showed such fact.  There was also a Federal case cited, which we did not then, nor do we now, consider in point.  From a more thorough exami-

nation of authorities we are convinced of our error in the divisional opinion. The part of the petition which charges that the deed should be held void because of the act of the sheriff proceeds upon the theory that the deed is not void but only voidable, upon proof of extraneous facts, i. e., (1) proof of the wrongful act of the sheriff and (2) proof of consequent damages and injury to the judgment debtor. If the deed for this and other reasons assigned is void on its face, then there is no occasion for equitable relief, because it convicts itself and no title passed thereby, and if clearly void on its face, casts no cloud upon title. It is on the theory that the deed is voidable only that a bill in equity will lie.

It has long been held in this State that the mere fact that there was a sale *in solido* does not render the sale nor the deed *ipso facto* void. The statute regarding sheriff's sales of real estate has been practically the same since 1825. The statutes at the time this sale was made and now, reads:

"Sec. 3185. When an execution shall be levied upon real estate, the officer levying the same shall divide such property, if susceptible of division, and sell so much thereof as will be sufficient to satisfy such execution, unless the defendant in the execution shall desire the whole of any tract or lot of land to be sold together, in which case it shall be sold accordingly."

Having under consideration the statute of 1825, SCOTT, J., in Rector v. Hartt, 8 Mo. l. c. 461, said: "We regard this statute as directory. A violation of its injunctions will not make a sale void, although it may be good cause for setting it aside on proper application. A similar statute in New York has received a similar construction, Groff v. Jones, 6 Wend. 522, an authority entitled to respect, not only from the acknowledged ability of her judges, but from the fact that her mode of conducting sales of real estate under execution conforms more nearly to ours than most of

the states. . . . Let it not be supposed that we entertain the opinion that a sale cannot be set aside when an officer has been guilty of an abuse of discretion in making it. It would be a stain upon our jurisdiction if such a power did not exist in the courts. All that is intended to be said is, that a sale in mass by a sheriff, of distinct parcels of real estate, is not *ipso facto* void. None of the authorities cited by counsel maintain such a principle." And on page 462, the learned judge further says: "We subscribe to the principle to be extracted from these cases, that a sale in mass, by a sheriff, of distinct parcels of real estate, may be set aside on motion, or by a bill in chancery, and they, in our opinion, furnish no foundation for the contrary rule attempted to be set up, that such a sale is *ipso facto* void, and will be so regarded in a collateral proceeding." In the same case, it is further said: "The law has entrusted the officer with a discretion in conducting sales of land, and confides that he will exercise that discretion in a manner most beneficial to all concerned, reserving a power in the courts to control and correct that discretion, when it has been abused, by setting aside his sales." Again, in Fine v. St. Louis Public Schools, 30 Mo. l. c. 173, this court said: "On the trial the plaintiff read in evidence, among other conveyances, a deed from the sheriff of St. Louis county to Joshua Fine for the tract of which the land in controversy is a part. The defendant objected to the evidence on the ground that the deed was void, the whole tract having been sold in one mass without being divided. The statute relating to the levy and sale of property under execution is directory, and a violation of its injunctions will not make void a sale for such cause, although it may be good ground for setting it aside, on proper application."

And in Bouldin v. Ewart, 63 Mo. l. c. 336, we again said: "Objection is further made that the land was sold in mass, and not in parcels, as provided by

law. Such a sale, it has been held, is not *ipso facto* void, but is subject to be set aside on motion, or by bill in equity, where injury has resulted therefrom to the judgment debtor. [Rector v. Hartt, 8 Mo. 448; Fine v. Public Schools, 30 Mo. 166; Kelly v. Hurt, 61 Mo. 468.] The same rule applies to the inadequacy of the consideration, which is also urged.''

Similar expressions to the ones quoted above are those of HENRY, J., in Wellshear v. Kelley, 69 Mo, l. c. 355; BLACK, J., in Hays v. Perkins, 109 Mo. l. c. 108. BRACE, J., in Lewis v. Whitten, 112 Mo. l. c. 328, and LAMM, J., in Morrison v. Turnbaugh, 192 Mo. l. c. 444.

From the cases we take the rule to be (1) that the statute is directory, (2) that by it some discretion is allowed the officer, (3) that an abuse of this discretion may be and should be reviewed by the court either upon motion or direct attack by a bill in equity, (4) that this attack should be made in seasonable time, (5) that the abuse of the sheriff's discretion by a sale *in solido* is only an irregularity which may render the deed and sale voidable and not void.

To these conclusions may be added that the attack by bill in equity is good as against a subsequent purchaser with knowledge or notice of the unwarranted violation of the sheriff's discretion and knowledge or notice of the injury done the execution debtor thereby.

So that under these authorities, the deed in question is not void upon its face for the reason now under discussion, but is only voidable. To make a case the plaintiff would have to show (1) a sale *in solido,* (2) that such was abuse of the discretion lodged with the sheriff, (3) consequent damage and injury to the judgment debtor, (4) a seasonable application for redress, and (5) if against a subsequent grantee knowledge and notice upon his part of the things mentioned in the preceding paragraph, and reiterated in the first three numbered subjects in this paragraph.

Was there such proof in this record? We are now convinced that there was not. There is no oral proof as to the sale being *in solido* and there is a presumption that the officer did his duty in conducting the sale. [Owen v. Baker, 101 Mo. l. c. 413; State v. David, 131 Mo. l. c. 393; State ex rel. v. Crumb, 157 Mo. l. c. 556 and cases cited therein.] Plaintiff relies upon the recitals of the deed. The recital so far as applicable, thus reads: "I did........expose for sale at public auction, for ready money, the above described real estate, and William Hunter being the highest bidder for the following described real estate, viz.: n. ½ ne. ¼, Sec. 35, Twp. 17, R. 12, the said last above described tract was stricken off and sold to the said William Hunter for the sum bid therefor by him as above set forth."

We have gone into the authorities on this question, both those cited and such others as we could ourselves find, and conclude that this recitation in the deed is not sufficient to raise a presumption even that the sale was made *in solido*. In Cooley on Taxation (3 Ed.), p. 951, it is said: "But where parcels are separately sold, there is no objection to their being united in one conveyance if purchased by the same person, and their being so joined raises no presumption that they were not separately sold." So, too, says Black on Tax Titles, sec. 401: "But where parcels are in fact separately sold, there is no objection to their being united in one conveyance, if sold to the same person, and the joinder of two separate tracts of land in the same tax deed will not of itself be sufficient to raise a presumption that they were sold in gross." To a like effect is 2 Blackwell on Tax Titles, sec. 782, whereat it is said: "The mere fact that a deed comprises several tracts raises no presumption of sale *en masse*."

In the case of Bennett v. Darling, 86 N. W. (S. D.) l. c. 751, the South Dakota court says: "In support

of their second assignment of error, appellants contend that respondent's tax deed offered in evidence is void upon its face 'for the reason that it shows that all the lands and lots described in the complaint and in said tax deed were sold in gross or in lump for the sum therein specified, and that the same were not sold in separate tracts or parcels.' Although the appeal is from the judgment alone, and the findings of fact and conclusions of law are not in the abstract, the right to have the foregoing point considered, as an error of law occurring at the trial, is preserved by a proper objection and exception to the introduction of the deed in evidence. A careful examination of such instrument fails to disclose anything to indicate that the different lots therein described were sold together for a gross sum, instead of being sold in separate tracts or parcels, and the deed is not rendered void by the mere fact that the property described in the various certificates was included in such conveyance. In the absence of an authorizing statute, when separate parcels or tracts of land are sold to the same person there is no objection to uniting them in one tax deed, and such joinder raises no presumption that they were sold in gross.''

The Supreme Court of Nebraska, in Towle v. Holt, 15 N. W. l. c. 205, having a similar question to deal with, uses this language: ''Objection was made to the deed because two separate and distinct tracts of land not contiguous were taxed and sold together for a sum in gross. It is a sufficient answer to say that it is not sustained by the record. While two separate and distinct tracts were included in the deed, as the statute provides they may be, yet it does not appear that they were sold together. The court, therefore, erred in sustaining this objection.''

The case of Waddingham v. Dickson, 17 Colo. l. c. 229, lends some light upon the question by the following language: ''It is a sufficient answer to the third

objection made to this deed, to say there is nothing in our statute which requires separate deeds for each piece of property sold, where the purchaser of the several tracts is the same person. In the absence of a statute to the contrary the common law rule must prevail. This certainly sanctions the conveyance in the same deed of any number of separate parcels of land.''

We are therefore of the opinion that the deed itself is no evidence of the fact of a sale *en masse.* This being true there is no evidence in this record that there was an abuse of discretion upon the part of the sheriff, or a violation of this statute by the sheriff. Without this, so far as the point under consideration is concerned, the plaintiff's case must fail, as it also must fail on account of no proof showing notice to the subsequent grantee, the defendant herein.

V. (a) It is urged in brief of counsel for the plaintiff that there was no execution issued under which levy and sale were made. The deed recites that a levy and sale were made under an execution of date May 7, 1897, for $4.66 taxes and $29.92 costs, making a total of $34.54. No execution was found in the files. The defendant offered the execution docket, as pertains to the case, which showed an execution of date April 30, 1897, in the total sum of $57.87, on the judgment of date February 16, 1897, being the date of the judgment in this case. This record also shows the delivery of this execution which was returnable to the September term, 1897, to the sheriff, and that it was returned satisfied September 11, 1897. The deed in this case was acknowledged on that day, although it shows the sale to have been made on September 8th. These execution dockets are required to be kept, and called at each term of the court, and it is made the duty of the court to see that such dockets are made out for each term, and that the return of executions

are entered therein. [R. S. 1899, secs. 1594 and 1675.] The recital in the sheriff's deed is, therefore, contradicted by the record of the court. The prima-facie proof is overcome by positive proof.

But defendant whilst contending that this is a collateral attack and not a direct proceeding, says that this question is outside of the pleadings. That plaintiff only pleaded three grounds, and the absence of an execution was not one. This latter contention is correct. However, we have taken the view that this is a direct attack upon this deed, and in such case, the matter should have been pleaded, as were the other grounds. For this reason and without passing upon this question, we hold this contention of plaintiff untenable.

(b) The petition does charge "that said deed should be held void for the reason that it shows upon its face that no levy was ever made on said lands prior to the date of the pretended sale." This refers to the following language in the deed: "by virtue of which said execution, I, the said sheriff, did, on the——day of————A. D. 19—, levy upon and seize the above described real estate, situated in my said county."

It will be noticed that the day, month and year are left blank. That for the year is used "19..." when the sale was made in 1897. Plaintiff contends that this shows no levy. If such a recital as to levy were required in a sheriff's deed, this would become a serious question and to our mind a fatal one. A reading of section 3210, shows that no such recital is required in a sheriff's deed. This section of the statute has remained the same in words since 1835.

Discussing this point in Hunter v. Miller, 36 Mo. l. c. 147, this court said: "And it is still more difficult to see the objections to the deed; it contains all the recitals that the statutes require, and indeed more, for it recites a levy made by the sheriff upon the real estate, which was unnecessary. And herein is perhaps

the objection which the court below had to the deed, for it is recited in the deed that the sheriff, Burch, levied upon the real estate; while the execution shows that the sheriff, Kier, endorsed the levy upon the execution. It is not deemed that the variance would invalidate the deed even had the recital been material, but it surely could not affect it when the recital in the deed was mere surplusage that might be entirely omitted without injury."

If it is mere surplusage as that case holds then these meaningless blanks are harmless. They can be rejected. This point is therefore ruled against plaintiff.

VI. Having reached the conclusions expressed in the preceding paragraph it is not necessary to discuss the defense of estoppel *in pais* pleaded by defendant.

We have throughout taken the contention of the plaintiff that his petition was a bill in equity to cancel this deed. Had we taken the contention of defendant as made in this court, that the petition was one under section 650, then we would have a collateral attack upon this deed and the deed is undoubtedly good as against collateral attack.

But as we took plaintiff's contention, and treated the case as a case in equity, we have the right to examine all the evidence and reach our own conclusions as to what should be the decree entered. Under the evidence no equitable relief can be granted the plaintiff, nor should it have been so granted by the learned chancellor below. We could enter the decree here, but the better practice is to have the conclusion we reach entered by the circuit court. The case is therefore reversed and remanded with directions to the circuit court to enter its judgment and decree dismissing plaintiff's bill, the same to carry the costs against plaintiff. All concur.