JOHN McD. ROSS, Respondent, *v.* JEREMIAH AUSTILL and WILLIAM S. ROWE, Appellants.

*Quære.* Whether the Act requiring the judge to fix the time and place of holding the District Courts in certain counties is constitutional, and if the Legislature can delegate such power to the judges? The Court will take notice of the history of a county as to the times and places of holding courts.

The time and place of holding court should not be left in doubt.

A refusal to grant a continuance for the absence of witnesses or counsel, under circumstances showing that the party or his counsel was surprised as to the time or place of holding court, is error.

The verdict must conform to the issues. And if the Court instead of having the verdict corrected by the jury, attempt to correct it by the judgment, and go beyond the verdict, it is error.

It is error to refuse a new trial, where justice requires that a case should be re-tried.

Pending an appeal, an order was granted by a justice of this Court, staying proceedings on the judgment, though no "*undertaking*" was given to stay proceedings.

APPEAL from the Fifth Judicial District, Calaveras County.

The respondent filed his complaint against the appellants on the 7th of June, 1851, stating that on the 10th of March, 1850, at Mobile, in the State of Alabama, the parties to this suit, and Henry Myers, and Daniel F. Proat, executed mutual articles of association and agreement, declaring and agreeing that the object of the association was the proceeding to San Francisco, each individual paying his own expenses; and when there, to proceed to the gold mining districts, and establish a mill and other machinery for the purpose of grinding quartz rock to procure gold; —that Austill should deliver at Stockton, or any other point at the head of navigation which might be decided most accessible to the mining districts, castings for a stamp mill, and other machinery, free of cost to the company to that point; after which, the carriage and expense of erecting the machinery, and all other expenses of conducting the work, to be at the general charge of the company, each member bearing an equal portion in labour and money; that a president and secretary should be chosen, accounts kept, &c.; that the president should act as treasurer, and pay

the sums due members on the certificate of the secretary; and should also exercise a general supervision over the affairs of the company; that on the first of each month, the secretary should exhibit the earnings and expenses of the company; and after deducting expenses, pay to Austill 10 per cent. of the net earnings, as an equivalent for furnishing the machinery, and divide the remainder among the members; that Austill should not sell the machinery, except to the company; and on selling to them, he should be allowed the value of the machinery, with reference to its costs; that in case of sickness or disability of a member for a period exceeding one month, he should be entitled, during such time, to receive only one half of a share, unless he should provide an acceptable substitute; that on the vote of a majority, a member might be expelled, his accounts being made up to the end of the month; that in case a member should wish to retire before the expiration of twelve months from commencing operations in California, he should receive such equitable amount as might be agreed on between him and the company, to be paid out of the common funds; that the association should continue not less than twelve months, and as much longer as the members should then decide, at a meeting; any retiring member being subject to the provision before stated.

The complaint, (to which a copy of the articles was annexed,) averred that Proat abandoned the agreement in Alabama; that the parties to this suit and Myers arrived in California in June, 1850; shortly after which Myers abandoned the company, and returned home,—leaving only the parties to this suit members of the company; that the machinery mentioned in the articles was landed in California, and then taken to the mines at the joint expense of the parties to this suit, who acted together as partners until the 20th of August, 1850, when, meeting with no sufficient inducement to erect the machinery, the parties temporarily separated, in the hope of being better able to advance their joint interest, and with the distinct understanding and agreement that Rowe should go to San Francisco, Austill to Carson's Creek, and the plaintiff to Sonora, in order to obtain information, and discover or purchase mines, with a view to resume operations under the articles; that while the plaintiff was seeking to discover mines for the joint benefit, the defendants procured an interest

of two-sevenths in a certain quartz vein, (describing it,) called " Carson Creek Mine," originally discovered by one Hance, and being worked, at the time of filing the complaint, by the defendants, and Hance, Murphy, Smith, and others unknown to the plaintiff; that the said machinery belonging to the company was the principal inducement with Hance to give the defendants an interest in said mine; that the defendants, after becoming interested in said mine, repeatedly acknowledged the plaintiff's interest as a partner; but afterwards, in bad faith, and with intent to defraud the plaintiff, refused to allow him to exercise any control over the mine, or to participate in its profits, and refused to account, denying that the plaintiff was a partner, or had any interest in the mine; that the defendants had already received, as their share of the profits, upwards of $200,000, to one-third of which the plaintiff was entitled; as also to one-third of the two-sevenths of the mine; and that the plaintiff had spent most of his time in the service of the company; but had realized nothing to divide with the other parties.   Prayer, that the defendants set forth, under oath, an account of all moneys realized; that the plaintiff have judgment against them for one-third thereof; that the partnership be dissolved, and the interest of the company in the mine be sold, and the proceeds divided; and for general relief; and for a receiver, and an injunction.

The summons was served on the 10th of June, 1851; and required the defendants to answer in the clerk's office in ten days, &c., " and to appear at the District Court to be held for Calaveras County at the court-house thereof, at the Double Springs, on the first Monday of July next."

The defendants filed their answer on the 18th of June, 1851; admitting that the parties to this suit executed " a certain instrument without any date, with the view to form a partnership, for the uses and purposes therein stated;" that afterwards, one Myers and one Thomas Strong joined the parties, and became co-partners with them, subject to the terms of said instrument; that " the parties hereinbefore mentioned did proceed to the mines as is alleged in said complaint, and did devote themselves and their effects for their joint benefit under the terms of said instrument, from and after their arrival in the mines as aforesaid until about the middle of August, 1850," when " the parties

aforesaid, having been unsuccessful," &c., agreed to take an account of the affairs and stock of the partnership, and dissolve the same ; which was accordingly done.  The answer then denied all the allegations of the complaint not expressly admitted by the answer.

The cause was tried on the eighth of July, 1851, at Jackson, in Calaveras county; the Court then sitting there.  Before the trial, the defendants moved for a continuance, upon the affidavit of Austill, stating that he had a good defence to the action ; that he could not then proceed to trial on account of the absence of Strong and one Starling, of the State of Alabama, by whom he expected to prove that any and all partnerships between the plaintiff and defendants were dissolved by mutual consent about the twentieth of August, 1850, more than two months before the time when the defendants acquired any interest in the mine in question ; that the defendants had not had time to procure the attendance or deposition of either of said witnesses; that he knew of no other persons in the State, by whom those facts could be proved; that the defendants had employed counsel in San Francisco, (his attorneys of record,) on whom he relied to act in his behalf, and believed such counsel would arrive that day; and that the affidavit was not made for delay, &c.  The Court over-ruled the motion, and directed the trial to proceed, in the absence of the counsel expected from San Francisco; another attorney for the defendants, however, being present.  The jury returned the following verdict.  " We, the jurors, find the verdict for the plaintiff the sum of forty thousand dollars."  The Court rendered judgment, by which, after reciting that the verdict was conclusive that a partnership existed between the parties as charged in the complaint, that the plaintiff was interested to the amount of one third of the interest held by the defendants in the Carson's Creek Mine, and that the interest held by the defendants was two-sevenths of the whole, it was ordered and decreed that the partnership between the plaintiff and defendants be dissolved ; that the plaintiff recover of the defendants the sum of forty thou-sand dollars assessed by the jury; that the two sevenths of the mine be sold by the sheriff, &c. ; that one third of the proceeds of the sale be paid to the plaintiff; that out of the remaining two thirds of the proceeds the said forty thousand dollars and costs,

be paid to the plaintiff, unless sooner paid by the defendants; that the residue of the proceeds be divided equally between the defendants; and in the event of the proceeds being insufficient to satisfy the judgment, that execution issue against the defendants, &c.  The trial was held, and the judgment signed by " E. Heydenfeldt, Judge Seventh Judicial District."  A motion by the defendants for a new trial, on the ground that the verdict was contrary to evidence, and to the instructions of the Court, was overruled.  On the day after the trial, the expected counsel for the defendants arrived from San Francisco, and filed a notice of appeal; and filed an undertaking for costs on the 25th of the same month, prior to which, on the 12th and 18th, the plaintiff had taken out executions, directed to the sheriffs of San Francisco and Calaveras counties.

The transcript of the record was filed in this Court, on the 8th of August, 1851; and on the next day, the appellants filed their petition in this Court, setting forth the foregoing facts; and further stating that in March, 1850, Robert Hopkins was legally elected by the legislature Judge of the Seventh Judicial District, and duly qualified, &c., and acted as such; that he subsequently obtained from the legislature leave of absence from the State, and before the expiration of such leave, returned, and resumed his functions as such Judge, and still continued to exercise the same; that from the time of the election of said Hopkins to the filing of the petition, he alone was the constitutional Judge of the Seventh District, during all which time there was no vacancy in said office; that during the absence of said Hopkins, the governor appointed said Heydenfeldt Judge of the Seventh District, by virtue of which said Heydenfeldt acted as Judge of such district during the absence of said Hopkins; that at the time the judgment was rendered, C. M. Creaner was the legally appointed and qualified Judge of the Fifth District; that the judgment was therefore void, the said Heydenfeldt having no authority to hold said Court.  (It seems that Heydenfeldt, as Judge of the Seventh District, was holding Court for Creaner, the Judge of the Fifth District, pursuant to the statute authorizing the Judge of one district to hold Court for the Judge of another district.)  The petition then stated that the sheriff of Calaveras county had advertised the interest of the appellants in the mine for sale, on the 14th of that month, by

virtue of the execution issued on the judgment; and prayed an injunction restraining such sale, and staying all proceedings on the judgment pending the appeal.  The petition was verified by affidavit.  On the same day, Justice Bennett ordered a stay of proceedings till the decision of the appeal; and that a copy of the order and petition be served on the sheriff, and the attorneys of the respondent; the order to take effect from the time of such service.

*Robinson, Hastings, Bonham,* and *Rice,* for the appellants. 1st. The judgment and proceedings are void.  E. Heydenfeldt was not Judge of the Fifth District, and had no colour of authority to act as such, nor of any district.  2d. The time and place of holding the Court was not fixed by law.  3d. A continuance should have been granted.  4th. The verdict did not authorize the judgment.  5th. The complaint discloses no cause of action.

The only possible cause of action disclosed, was for the failure of the defendants to erect and work certain machinery for the joint benefit.  To this alone can the verdict be considered responsive.  But the judgment assumes that the verdict establishes the existence of a partnership, after the time of its dissolution as alleged in the answer.  The judgment goes beyond the verdict, in this assumption; and must therefore be reversed.

But viewing the verdict and judgment as responsive to the cause of action before mentioned, there is no allegation of damages on that score; and the plaintiff cannot recover that for which he did not sue.

But the proceedings were all erroneous.  The Court was holden at a time and place unknown to the law.  The Constitution distributes the powers of the government among three departments; and inhibits any "person charged with the exercise of powers properly belonging to one of these departments" from exercising any "functions appertaining to either of the other, except as thereinafter expressly directed or permitted.  Art. 3.  The same instrument directs that the times and places of holding the terms of the District Courts in the several districts shall be provided for *by law.*  The duty of fixing the times and places of holding these Courts is made one of the "functions" of the legislature. The legislature did not exercise this function, but imposed it

upon the judiciary by the Act concerning Courts, &c., March 11th, 1851; enacting that in certain counties, (including Calaveras,) the *time* for holding the District Court shall be fixed by the judge's order, which order shall be entered on the minutes, and published.   This law was an attempt to delegate the exercise of a "function properly belonging" to the legislature; which could not be done.   A strong illustration that a legislative power cannot be delegated, is to be found in the decisions in New Jersey, Pennsylvania, and North Carolina, to the effect that a matter submitted to the people themselves, and by them regulated in a particular manner, is not obligatory till enacted into a law by the legislature.   Besides, this "function" must be exercised through the medium of *law*, else the legislature cannot know that it is done.   If the judge fix the time, the doing so is not a fixing of it "by law:" it is the judge who "provides" for it, not the "law."   To fix the times and places, &c., is either a legislative, or a ministerial act.   If legislative, it cannot be performed by the judiciary.   If ministerial, it should appear affirmatively by the record that it has been done; it being a settled principle that all things necessary to confer jurisdiction should appear upon the record.   The transcript shows no such fact.

It has been regarded, from the time of the meeting of the barons at Runnymede, as being vital to every interest of the citizen, that the people should have certain and seasonable knowledge of the times and places of holding courts; and this object was sought to be secured by a stipulation in *Magna Charta*, which is found to have been reproduced in nearly every one of the Constitutions of the several States, "to the end," in the language of the organic law of Massachusetts, "that it may be a government of laws, and not of men."   Should this duty confided by the Constitution to the legislature, be entrusted to any other department, or agent, its benefits as a safeguard are in danger of being utterly lost to the people.   It may not be exercised at all, and no Courts holden; or exercised arbitrarily, or corruptly, so as to give the suitor near at hand, or the favourite, the advantage over his more distant or less favoured antagonist.   If exercised by an agent, it will be under no responsibility to the people.

As to the place of holding the Court, the legislature never au-

thorized any agent or other department to appoint it. A law was passed authorizing the people· of Calaveras County to select a county seat, which, being ascertained, became the seat of justice by virtue of a general law. But that law did not empower any one to announce its result; and until that result was ascertained and made known according to law, Double Springs continued, by virtue of the Act of April 21st, 1851, to be the proper place for holding the Court. It was there the defendants were summoned to appear; yet the record shows the trial to have been had at Jackson.

*Thomas* and *Morse*, for the respondent. 1st. There is no statement of the evidence, nor any exception taken, either to the ruling of the Court, or the capacity of the judge. 2d. The order granted by Justice Bennett is irregular. The jurisdiction of this Court is only appellate; but the petition on which the order was granted is an original proceeding. Const. Art. 6, sect. 4th. The acts of an officer *de facto*, whether judicial or ministerial, are valid so far as the rights of the public or third persons are concerned; and neither the title of such officer, nor the validity of his acts as such, can be indirectly called in question in a proceeding to which he. is not a party.. Plymouth *v.* Painter, 17 Conn. 585; F. & M. Bank *v.* Chester, 6 Humph. 458; 1 Penn. 267; 7 Johns. 549; The People *v.* Heydenfeldt, in this Court. An officer *de facto* is one who exercises the duties of an office under colour of right, by virtue of an appointment or election; being distinguished on the one hand, from a mere usurper, and on the other, from an officer *de jure.* 17 Conn. 585. 5th. Sect. 13 of the Act dividing the State into counties, passed April 25th, 1851,. provides that the county seat of Calaveras county shall be at Double Springs. An Act passed April 29th, 1851, orders a special election on the fourth Monday of May, 1851, in that county, to determine the county seat; and provides that the place receiving the largest number of votes at said election shall be the county seat, until otherwise provided by law. It is a part of the history of the country, of which the Court must take ·notice, that the town of Jackson received the highest number of votes, and become the county seat. The time of holding the Court was fixed by the judge in the manner provided by law; and the par-

ties appeared by themselves and counsel. 6th. Every reasonable construction is to be adopted in support of a verdict: and the verdict in this case, in connection with the pleadings, authorized the judgment. 1 Root, 321; 10 Mass. 64; 1 Bibb, 257; 2 Ib. 178. 427; 1 Dall. 458.

Justice ANDERSON delivered the opinion of the Court. This suit was brought in the Court below, by Ross against Austill & Rowe, upon a contract of limited partnership. The contract is set out in the record. The summons in this case, was issued on the 7th of June, 1851, and served on the appellants on the 8th, citing them to appear at Double Springs on the 1st Monday of July. The counsel of record for the appellants, filed the answer to the complaint on the 18th of June. The cause was tried at Jackson on the 8th of July, and a verdict rendered for the appellee, (the complainant below,) for forty thousand dollars. At the date of the trial, Austill filed an affidavit for a continuance; and upon the rendition of the verdict, the appellants moved for a new trial. The Court overruled it; and made a decree for the amount found by the jury. The appellants took an appeal. An execution was issued in favour of Ross, and levied upon certain mines, in which Austill & Rowe held an interest. The appellants filed a bill before Justice Bennett, then of this Court, and prayed for an injunction to stay the proceedings until the final hearing of this cause; which was granted.

The constitutional objection has been insisted upon by the counsel for the appellants, as to the mode in which the time and place of holding the Court in Calaveras County had been provided for. The Court waive any expression of opinion upon this question. There are other points in the case upon which it should be decided.

The counsel for the appellee insist that this Court is bound to take notice of the history of Calaveras County. This is true, qualified, as affecting the times and places of holding the Courts. The time and place of holding a court, are essential constituents of it; and without them, the Court is not in possession of the right of exercising its full functions. The public knowledge of the times and places of holding courts is intended to be certain, and without doubt. It was the duty of the Court below to take

notice of the history of the county, in relation to the seat of justice. It was disregarded; or else the judge would have adjourned the Court without trying any cause. The public mind was in great excitement. But very few votes had been polled in the county, in relation to the seat of justice. It was known that no sufficient notices of election had been posted. There was great confusion, doubt, and contrariety of opinion. To hold the Court at Jackson, under such circumstances, was well calculated to take suitors and counsel by surprise, and to prevent a faithful administration of justice. Under the circumstances of the case, the Court erred in not granting to the appellants a continuance of the cause, upon the affidavit of Austill.

The verdict of the jury is not in conformity with the issues submitted; nor does it appear there was any attempt to correct it. In regard to this, it was competent for the Court to send the jury out again, under its advice. There is a wide variance between the complaint, the finding of the jury, and the written contract of partnership. The Court ought to have granted a new trial.

The decree of the Court goes beyond the verdict, and attempts to cure it. This is a dangerous and highly objectionable practice, and which this Court will not sanction. Justice requires that this case should be sent back, and re-tried.

> The decision of the Court is, that the judgment of the Court below be reversed; the writ of injunction, restraining the execution, be made perpetual; that the cause be remanded, and a new trial ordered.