————O————

DAVID W. BOULDIN, Respondent, *vs.* DAVID EWART, Appellant.

1. *County seat, removal of—Pettis county—Statute, construction of—Judicial sales.* —In February, 1864, the legislature passed an act " to take effect on its passage," the first section of which declared that the seat of justice of Pettis county was thereby removed from Georgetown to Sedalia. The second section provided for the appointment of commissioners to select a site for new county buildings and obtain title thereto. The third section enacted that the public records and movable property should be removed to the new county seat as soon as practicable after the passage of the act, and all courts thereafter held should be held at the new county seat, provided, however, that the county court should not be required to hold its sessions at the new county seat until suitable buildings were erected for their reception. Section nine designated the commissioners to select the site for the new buildings, but prohibited the levy of any tax for the erection of a court house, and provided that the citizens of Sedalia and vicinity should furnish the necessary means for that purpose, and that the commissioners should not enter upon their duties till sufficient money had been raised for that purpose. Section ten made it the duty of the court at its next regular term after the passage of the act, to appoint an architect

to prepare plans and make estimates for the new court house, which were to be approved by the county court and the commissioners were then to enter upon their duties: *Held,* that until suitable buildings had been provided at the new county seat, and the county court had decided that it was practicable to remove the records there, it was lawful for the circuit court to continue its sessions at the old county seat, and a sale of land on execution made at the old court house, during a term of the court being held there *de facto,* would comply with the law requiring such sales to be made at the court house during a term of court, and the validity of such sale could not be attacked on this ground.

2. *Execution—Sales of land in a mass—Inadequacy of condition.*—A sale of lands under an execution, in mass, instead of in parcels, is not *ipso facto* void, but is subject to be set aside on motion or by bill in equity, where injury has resulted therefrom. The same rule applies to inadequacy of consideration.

*Appeal from Pettis Circuit Court.*

*Phillips & Vest,* with *Draffin & Williams* for Appellant.

*Childress & Musser,* for Respondent.

HOUGH, Judge, delivered the opinion of the court.

This was an action of ejectment for one thousand and five acres of land lying in Pettis county. The plaintiff recovered judgment for three hundred and sixty-five acres, and the defendant has appealed. The only question for our determination is as to the validity of a sale under execution made on the 6th day of May, 1864, by the sheriff of Pettis county, during the session of the circuit court of said county at Georgetown. The defendant claimed title under this sale to that portion of the premises recovered by plaintiff.

The plaintiff contends that said sale was void; that prior to the date thereof the county seat had been removed from Georgetown to Sedalia, and that thereafter the circuit court could not lawfully hold its sessions at Georgetown; that in legal contemplation there was no court house there, and that the statute requiring all real property taken in execution to be sold at the court house door, on some day during the term of the circuit court of the county where the same is situated, was consequently not complied with. Other objections have been urged as being fatal to the validity of said sale which will be noticed hereafter.

On the 15th day of February, 1864, the Legislature passed an act, which took effect on its passage, the first section of which is as follows : "The seat of justice of the county of Pettis is hereby removed from Georgetown, the present county seat, to the town of Sedalia, on the Pacific railroad."

The second section required the commissioners thereinafter appointed to proceed immediately to select a site for the location of the county buildings, and to obtain title to the same with the approval of the county court.

The third section is as follows : " The public records, and public movable property, shall be removed to the new county seat as soon as practicable after the passage of this act, and all courts hereafter to be. held for said county shall be held at the new county seat: *Provided, however,* that the county court shall not be required to hold their sessions at the new county seat until suitable buildings are erected for their reception."

Sections four to eight inclusive provided for ascertaining the cash value of the town lots in Georgetown, and for purchasing the same from the owners and paying them therefor.

Section nine designated three commissioners who were to select the site for the county buildings, prohibited the levy of any tax for the erection of the court house, but provided that the citizens of Sedalia, and vicinity, shall furnish the necessary means therefor, and concluded with the following language : " Nor shall the commissioners herein appointed enter upon the discharge of the duties imposed, until a sufficient amount of money has been raised for the completion of said court house."

Section ten made it the duty of the county court at its next regular term after the passage of the act to appoint an architect to prepare a plan of a court house and make an estimate of the cost of the same, which plan and estimate were to be submitted to said court for approval or rejection, and if approved, the commissioners were then to enter upon the discharge of their duties as provided in the ninth section.

It appears from the record that the various courts of Pettis county had been held continuously since the year 1837, in the court house at Georgetown, where the circuit court held its sit-

ting at the May term, 1864. In the last named year the court met on the 2nd day of May, and continued its sessions until the 7th day of said month, on which day it adjourned to court in course. On the 5th day of that term the sale under consideration took place. It further appears that the county court met at Georgetown August 1st, 1864, and adjourned until August 15th, 1864, on which day the following order was made, "Ordered that the clerk of this court be required to move the records and papers of the circuit and county courts to St. Louis, and that the office of the clerk of the courts be removed temporarily to Sedalia, until otherwise ordered by the court." Said court upon the same day adjourned to meet in Sedalia on Monday August 29th, 1864, and afterwards met at said place pursuant to adjournment.

The act of February 15th, 1864, is manifestly the work of an unpracticed draughtsman, and is conspicuously deficient in congruity and completeness ; and it may well be doubted, when all its provisions are considered, whether an immediate, absolute and unconditional removal of the county seat was ever intended.

In view of the general laws in relation to the removal of county seats, and the organization of new counties and the erection of county buildings, which have been in force in this State from an early day, a county seat, without a court house and jail would be quite an anomaly. Indeed, a general law which has been in force, certainly since 1835, and perhaps longer, requires that a good and sufficient court house and jail shall be erected at the seat of justice of each county, and in case of a change of the county seat, the circuit court is required to continue its session at the old county seat until convenient buildings for holding the court, together with a good and sufficient jail, are provided (Rev. Stat. 1855, p. 517, § 21) ; and yet, under the provisions of this act of February 15th, 1864, a site for the county buildings might never have been selected, and the buildings themselves never erected. The commissioners were expressly forbidden to select a location for the county buildings until the citizens of Sedalia and its vicinity should raise an amount of money sufficient to complete the court house, according to plans and estimates to be approved by the county court. This, we presume, has been done ; but it

might never have been done, as there was no way of compelling the people of Sedalia to raise the required amount. But, conceding that the act itself accomplished the removal of the county seat, though no provision should ever have been made thereunder for the accommodation of the courts, where was the circuit court to be held in the meantime? It had no authority to provide a court room or clerk's office, or other conveniences for holding court at Sedalia. By the terms of the act the county court was not required to hold its sessions at Sedalia until suitable buildings were erected for their reception. No reason can be perceived why the circuit court should be required to hold its sessions at the new county seat before suitable buildings were provided for it, and the county court not be so required. It would have been impossible for the circuit court to have held a session there until some place had been provided for it. The maxim *lex non cogit ad impossibilia* is as applicable to the present case as it would be in the case of individuals.

It seems to us that a fair and rational construction of the third section would be, that the circuit court was not to hold its session at Sedalia until it was practicable to remove its records there, and, of the practicability of their removal, the county court was to be the judge. And this is the order of requirement observed in the section itself. It first requires the removal of the records to the new county seat, and then requires that the courts shall be held there. The record before us shows that the county court did assume control over this matter, and the records were not removed from Georgetown, nor the clerk's office transferred to Sedalia, until the middle of August, 1864.

If the general law in relation to the removal of county seats can be invoked to supplement the crude provisions of the act under consideration, it would most clearly appear to have been the duty of the circuit court to have continued its sessions at the court house in Georgetown, until provision was made for it at Sedalia. Certain it is, however, that for some reason the May Term, 1864, of the circuit court, was held at the court house in Georgetown. Whether it was, as a matter of fact, so held because the new act had never been promulged and was unknown to the circuit judge,

or, because, being cognizant of its provisions, he did not construe them as requiring him to hold court at Sedalia until room was provided, and the records were removed, we cannot know. The legal presumption is, that the judge knew of the act. Now, suppose that in some litigated cause the jurisdiction of the court to hear and determine causes at Georgetown had been questioned in consequence of this act, and the court had adjudicated that its session was properly held there, could such determination of the court be attacked collaterally? We think not. In our opinion the proceedings and judgments of the court, at its session in Georgetown, have precisely the same validity and force which they would have had if the right to hold said session at that place had been formally and solemnly determined. The very fact of holding the court there necessarily implied a judicial assertion of the right to hold it. It was a *de facto* court, and its proceedings were not void, even should it be conceded that its session was at a place unauthorized by law. (Kane vs. McCown, 55 Mo. 198.) This being so, the place where such court was held, was, at least *pro hac vice*, the court house. The object in having judicial sales of real estate to take place at the court house door during the session of the circuit court, is to prevent as far as possible the sacrifice of property which might ensue if sales were had at a less public, or a less frequented place, as well as to have the officer of the court and its process conveniently under the control of the court.

So far as appears, these objects were as fully met in the present case as they would have been if the act changing the county seat had never been passed. The defendant in the execution has never complained of this sale. No motion was ever made, or other direct proceeding had to set it aside; and we do not think it can be assailed in the present action.

In both of the cases cited by plaintiff's counsel (Northrup vs. People, 37 N. Y. 203, and Ross vs. Austill, 2 Cal. 183), in which the courts were held at places not authorized by law, the proceedings of the court were directly assailed on appeal; and in neither of them was it held that they were absolutely void.

We are of the opinion therefore, that the session of the circuit court at Georgetown, in May, 1864, and the proceedings thereat were not nullities, and that the execution sale in question is not void.

Objection is further made that the land was sold in mass, and not in parcels, as provided by law. Such a sale, it has been held, is not *ipso facto* void, but is subject to be set aside on motion, or by bill in equity, where injury has resulted therefrom to the judgment debtor. (Rector vs. Hart, 8 Mo. 448 ; Fine vs. Public Schools, 30 Mo. 166 ; Kelly vs. Hurt, 61 Mo. 468.) The same rule applies to the inadequacy of the consideration, which is also urged.

As the circuit court erred in its ruling as to the validity of the sale under execution, the judgment will be reversed, and the cause remanded. Judges Napton and Sherwood concur. Judge Wagner absent.