## W. W. NORMAN, Appellant, v. GEORGE W. EASTBURN et al.

### Division Two, July 19, 1910.

1. **GARNISHMENT: Taxing Costs Against Plaintiff: In Execution.** The circuit court has power to render judgment, for costs and as an indemnity for time and expense, against the plaintiff in favor of the garnishees summoned on execution in a garnishment proceeding, where the execution plaintiff failed to deny the answer of the garnishees and they were discharged, and to order execution to be issued therefor in their behalf. The fact that the statute in 1846 said "if any plaintiff in attachment, or in execution, shall cause any person to be summoned as garnishee," etc., and this statute was amended in 1855 by omitting the words "or in execution," does not render void a judgment for costs and expenses in favor of a garnishee summoned in execution.

2. **————: Judgment: Collateral Attack.** The circuit court has jurisdiction to determine whether a judgment for costs, time and expenses shall be rendered in favor of a garnishee who, having been summoned by plaintiff on execution, answers, and his

answer is not denied; and if it also had jurisdiction of the parties, its judgment cannot be attacked collaterally, for it was not void, but at most only an erroneous judgment.

3. **EXECUTION SALE: Notice to Non-Resident: Attorney-in-Fact.** Under section 43, p. 645, G. S. 1865, providing that "when real estate situated in a different county from that in which the defendant in the execution owning such real estate resides, is sought to be sold, under execution," notice in writing shall be served on the defendant in the execution, "if residing in this State, stating the fact of the issuing of the execution," etc., no notice was required to be served on a defendant who resided in another State, nor upon his attorney-in-fact residing in another county of this State than the one in which the lands lay. The statute provided for no notice to an agent or attorney-in-fact in any event, and it provided for a personal notice to the owner or defendant in execution only when he was a resident of some county in this State other than that in which the lands levied on were situated. And a deed made by the sheriff, at execution sale, after proper advertisement, is not void simply because written notice was not served on the non-resident defendant or his agent, whether or not either had any actual knowledge of the judgment or execution or sale.

4. ————: **Selling in Lump.** A sale under execution of lands in lump (in this case of 880 acres) is not void; but a failure to subdivide the lands and sell them in legal subdivisions was only an irregularity, which cannot be attacked collaterally, but only in the court under whose process the sale was made, and then only by the defendant in the execution.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort*, Judge.


AFFIRMED (*as modified*).


*James F. Green* and *Ernest A. Green* for appellant; *W. H. Miller* of counsel.

(1)   The judgments on which were made the execution sales under which defendants claim, are void, inasmuch as the court rendering them had no authority in law for the rendition of a judgment for an allowance to a garnishee in that kind of proceeding. Mfg. Co. v. Milling Co., 79 Mo. App. 158; G. S. 1865, chap.

142, secs. 20-23, p. 575; R. S. 1899, sec. 3454; R. S. 1845, secs. 35, 36, p. 141; R. S. 1855, secs. 72-74, p. 259; Stewart v. Anderson, 19 Mo. 479; O'Reilly v. Cleary, 8 Mo. App. 192; Simmons v. Railroad, 19 Mo. App. 546; Hoover v. Railroad, 115 Mo. 83. (2) The execution sales were furthermore void because the lands sold were situated in a different county from that wherein the execution debtor, Paxson, and his attorney in fact, resided, and no notice thereof was given to said execution debtor or to his attorney in fact. G. S. 1865, sec. 43, p. 645; R. S. 1899, sec. 3199; Harness v. Cravens, 126 Mo. 259; Welch v. Mann, 193 Mo. 304; Plaster v. Grabeel, 160 Mo. 669; Young v. Schofield, 132 Mo. 650; Walter v. Scofield, 167 Mo. 537. (3) The sales were void for the additional reason that the lands were sold, not in the legal subdivisions, but in a lump. G. S. 1865, secs. 30 and 54, pp. 644 and 646; R. S. 1899, secs. 3185 and 3210; Smith v. Cooperage Co., 100 Mo. App. 153; Yeaman v. Lepp, 167 Mo. 61; Corrigan v. Schmidt, 126 Mo. 304; Gordon v. O'Neil, 96 Mo. 350; French v. Edwards, 13 Wall. 506; Roser v. Trust Co., 118 Ga. 181; Williamson v. White, 28 S. E. (Ga.) 846; State ex rel. v. Elliott, 114 Mo. App. 562; State ex rel. v. Richardson, 21 Mo. 420; Martin v. Barber, 140 U. S. 634. (4) The proceedings in the circuit court of St. Louis, upon the motion to set aside the sale of the lands in controversy, are not *res adjudicata* between this plaintiff and these defendants. Clowser v. Noland, 72 Mo. App. 217; Dillinger v. Kelley, 84 Mo. 561; Springfield v. Plummer, 89 Mo. App. 515; Sherer v. Akers, 74 Mo. App. 217; State to use v. Bierwirth, 47 Mo. App. 551; Force v. Van Patton, 149 Mo. 446; American Wine Co. v. Scholer, 85 Mo. 496; Brennan v. Moule, 108 Mo. App. 336; Hathaway v. Railroad, 94 Mo. App. 343. (5) The court erred in decreeing that the defendants were the owners of the east half of the southwest quarter of section 24, township 25, range 12 east, in Stoddard county, they having dis-

claimed any right, title or interest therein. Railroad v. Iron Works, 117 Mo. App. 153; Graton v. Land Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 698.

*Russell & Deal* and *Ralph Wammack* for respondents.

(1) (a) The circuit court of St. Louis county had jurisdiction of the parties and of the subject-matter in the cases of John L. Paxson, plaintiff, against Henry Bauer and Henry Schaefer, garnishees of the Pacific Mutual Insurance Company, defendant, and the judgments rendered in those cases were valid and binding. They were not void judgments, even though the court may have misconstrued the law in making the allowances to the garnishees. Chouteau v. Gibson, 76 Mo. 38; Murphy v. DeFrance, 101 Mo. 159; Driving Park v. Kansas City, 174 Mo. 442; Brennan v. Maule, 108 Mo. App. 339. (b) All the issues which might have been raised and litigated by Paxson in his motion filed to set aside the execution sale are as completely barred by the judgment of the circuit court overruling that motion as if they had been directly adjudicated and included in the verdict. Donnell v. Wright, 147 Mo. 647; Hamilton v. McClain, 169 Mo. 51; State ex rel. v. St. Louis, 145 Mo. 551; Lyman v. Harvester Co., 68 Mo. App. 637. (c) Paxson having failed to deny or except to the answers of the garnishees, they were entitled to a judgment for costs the same as if they had been defendants in an ordinary case wherein Paxson was plaintiff. G. S. 1865, secs. 19 and 23, p. 575. (d) After the judgments had been rendered, it was the duty of the clerk to issue executions "forthwith," unless otherwise directed by the party in whose favor the costs were awarded. And when issued and placed in the hands of the sheriff of Stoddard county he was authorized to levy upon and sell the real estate of Paxson to satisfy them. G. S.

1865, sec. 31, p. 691; Bank v. Wharters, 52 Mo. 34; Baird v. Given, 170 Mo. 302; State ex rel. v. Ashbrook, 40 Mo. App. 64. (e) The executions were made returnable to the October term, 1871, which was the first term of the St. Louis County Circuit Court after the executions were issued on May 27, 1871. G. S. 1865, sec. 4, p. 640. (f) The motion filed by Paxson at the return term of the execution, to set aside the sale on account of the failure of the sheriff to sell the land in legal subdivisions and on account of the failure of the execution plaintiffs to notify Paxson of the issuing of the same, was made at the proper term. Nelson v. Brown, 23 Mo. 13; Mellier v. Bartlett, 89 Mo. 134. (2) Under the garnishment law in force at the time, the St. Louis County Circuit Court had authority to "render judgment in favor of such garnishee, against the plaintiff for a sum sufficient to indemnify him for his time and expenses," and had authority to adjudge the costs as in ordinary cases between plaintiff and defendant. G. S. 1865, secs. 1 and 2, p. 573, and secs. 22 and 23, p. 575; O'Reilly v. Cleary, 8 Mo. App. 192. (3) (a) According to his own testimony, Paxson was a non-resident of the State when the executions were issued and when the sale took place. Before he became a non-resident, he resided in Stoddard county, where the land sold under the execution is situated. Under such circumstances he was not entitled to notice. G. S. 1865, sec. 43, p. 645. (b) Had he been entitled to notice, the failure to give it was a mere irregularity which did not render the sale void. Young v. Schofield, 132 Mo. 668; Draper v. Bryson, 17 Mo. 71; Curd v. Lackland, 49 Mo. 451; Harness v. Cravens, 126 Mo. 260. (4) Selling the real estate in a "lump" did not render the sale void, and such question cannot be reached in this collateral proceeding. Hays v. Perkins, 109 Mo. 108; Lewis v. Whitten, 112 Mo. 328; Bouldin v. Ewart, 63 Mo. 336; Ables v. Webb, 186 Mo. 233; Hubbard v. Glass Works, 188 Mo. 18; Rector v.

Hart, 8 Mo. 448; Fine v. Public Schools, 30 Mo. 166; Kelley v. Hart, 61 Mo. 468. (5) (a) The validity of the sale of the lands in controversy was litigated in the circuit court of St. Louis county on a motion filed by Paxson in which he assigned the same reasons now assigned by appellant. Therefore, the question of the validity of the sale itself is *res adjudicata.* Chouteau v. Gibson, 76 Mo. 38; Johnson v. Latta, 84 Mo. 139; Murphy v. DeFrance, 101 Mo. 151; Young v. Bird, 124 Mo. 590. (b) The judgment of the St. Louis County Circuit Court upholding the sale of the lands in controversy, if binding on Paxson, is also binding on appellant Norman, who at best is only grantee by quit-claim deed and against his will. Foote v. Clark, 102 Mo. 394; Cooley v. Warren, 53 Mo. 166; Barton Bros. v. Martin, 60 Mo. App. 351. (c) The validity of the sheriff's sale cannot be impeached in a collateral proceeding, such as ejectment or a suit to determine title under section 650, nor can a judgment against a party duly notified and brought within the jurisdiction of the court be reversed or annulled in a collateral proceeding. Martin v. McClain, 49 Mo. 361; Hardin v. Lee, 51 Mo. 241; Knoll v. Woelken, 13 Mo. App. 275; Myers v. Miller, 55 Mo. App. 338.

GANTT, P. J.—This was an action instituted by plaintiff, W. W. Norman, against George W. Eastburn, George F. Taylor, Mercer D. Wilson and Joseph T. Wilson, under section 650, Revised Statutes 1899, to quiet title to certain real estate in Stoddard county.

Plaintiff alleged that he was the owner in fee-simple of section 24, township 25, range 12, containing 640 acres, and the north half of section 23, township 25, range 12, containing 320 acres, in all 960 acres; that the defendants claimed some interest in said lands, the character and nature of which was to petitioner unknown, but the same is adverse to the title of plaintiff; that George W. Eastburn and George F. Taylor

were non-residents of Missouri, so that the ordinary process of law could not be served upon them, and prayed an order of publication notifying them of the commencement of this suit. Plaintiff further stated that the land herein described is timbered land and not in the actual possession of any one and that he did not know whether the interest of the various defendants were joint or several. He prayed that the court would hear the testimony and decree the title, estate and interest of the parties severally in and to the same.

At the return term George W. Eastburn and George F. Taylor filed their separate answer denying generally each and every allegation in the petition, but later George W. Eastburn filed his separate answer to the plaintiff's petition, and to any pleading which might be filed by the defendants Mercer D. Wilson and Joseph T. Wilson, in which he denied that the plaintiff, W. W. Norman, and the said defendants, Wilson, were the owners of or had any right, title or interest in the north half of section 23 and all of section 24 except the east half of the southwest quarter of section 24, all in said township 25, range 12; that defendant Eastburn not only claimed to own, but in fact did own, and had a good fee-simple title to, all the lands in plaintiff's petition described, except the east half of the southwest quarter of said section 24, in which last mentioned piece defendant Eastburn disclaimed any right, title or interest, and alleged that he had no knowledge or information to form a belief as to who was the true owner thereof. For further answer the defendant Eastburn says that on the 10th day of January, 1870, the circuit court of St. Louis county, Missouri, a court of general jurisdiction, having jurisdiction of the parties and subject-matter in a suit therein pending, wherein John L. Paxson was plaintiff, and Henry Bauer and H. J. Schaefer were garnishees of the Pacific Mutual Insurance Company,

defendant, rendered a judgment in favor of said garnishees against said John L. Paxson for the sum of fifteen dollars and costs, upon which judgment execution was ordered issued. That on the 25th day of May, 1871, the circuit court of St. Louis county, Missouri, a court of general jurisdiction, having jurisdiction of the parties and subject-matter in a suit therein pending. wherein John L. Paxson was plaintiff and Henry Bauer was garnishee of the Pacific Mutual Insurance Company, defendant, rendered a judgment in favor of Henry Bauer against John Paxson for fifteen dollars and costs, upon which judgment execution was ordered issued forthwith upon the motion of the garnishee, that on the 27th day of May, 1871, the clerk of the circuit court of said St. Louis county issued executions numbered 299 and 300 respectively upon the aforesaid judgments, and directed them to the sheriff of Stoddard county, Missouri. That on the 30th day of May, 1871, said sheriff of Stoddard county, Missouri, by virtue of the authority vested in him by said execution so issued as aforesaid, levied upon and seized the real estate now in controversy as the property of John L. Paxson, and after having given at least twenty days' notice of the real estate to be sold and of the time, place and terms of sale of each, published in the Southeast Reporter, a newspaper published in the town of Bloomfield in said county of Stoddard, did on the first day of August, 1871, during the May adjourned term of the circuit court of the said county of Stoddard and while said court was in session, between the hours of ten o'clock a. m. and five o'clock p. m. of said day at the court house door in the town of Bloomfield in the said county of Stoddard, expose to public sale to the highest bidder for cash in hand, the real estate in controversy, and at said sale George W. Kitchen and George G. Pollard became the purchasers of the real estate in controversy, they being the highest and best

bidders for said real estate, and thereupon said sheriff executed to said purchasers deeds in due form of law conveying to them all the right, title and interest of the said John L. Paxson in and to the real estate herein described, and said sheriff made return on said execution accordingly to the October term, 1871, of the circuit court of St. Louis county, to which term they were returnable. That on the 20th day of October, 1871, during the October term, 1871, of the circuit court of said St. Louis county, the said John L. Paxson, through his attorneys, H. H. Bedford and George W. Hall, filed a motion to set aside the sales made by the sheriff of Stoddard county under said executions, and caused notice thereof to be served on the said George W. Kitchen and George G. Pollard. That on December 22, 1871, the said John L. Paxson and the said George W. Kitchen and George G. Pollard filed a stipulation in the said circuit court of St. Louis county that *ex parte* affidavits might be taken and used in the trial of said motion as fully as if the same facts appeared in deposition. That on Thursday, the second day of May, 1872, it being the April term, 1872, of said circuit court, depositions in said motion were opened and filed, and on the 10th day of May, 1873, it being the April term, 1873, of said circuit court, affidavits and counter affidavits were filed in said cause. That on the 19th day of May, 1873, it being the April term, 1873, of said circuit court of St. Louis county, the said circuit court after having heard and fully considered the motion to set aside the sheriff's sale made under and by virtue of said execution, overruled the same, and on May 28, 1873, it being the April term, 1873, of said circuit court, the motion for a rehearing pending in said cause was by the court denied. That on Monday, November 10, 1873, it being the October term, 1873, of the circuit court of St. Louis county, the said court, after having heard and fully considered the motion for a rehearing in said cause, overruled

the same. Defendant further says that by reason of the premises aforesaid the validity of the sheriff's sale of the land in controversy under execution number 300 was fully adjudicated by the said circuit court of St. Louis county, in a direct proceeding instituted by John L. Paxson against the purchasers of the land in controversy at said sheriff's sale, in the court having jurisdiction of the parties and the subject-matter, and said defendant now pleads the acts of said parties and the proceedings of said court in bar of plaintiff's right to recover and in bar of any plea which may be set up and made by defendants Joseph T. Wilson and Mercer D. Wilson.

Further answering, defendant Eastburn says that the plaintiff, Norman, claims title to said real estate in controversy by virtue of a quitclaim deed executed on the — day of ——, 1904, by John S. Mellon, who claimed to be the attorney in fact for John L. Paxson, and that defendants Joseph T. Wilson and Mercer D. Wilson claimed title by virtue of a quitclaim deed executed by H. H. Bedford on the — day of ——, 1905, and that said Bedford claims title to said land by virtue of a quitclaim deed from John L. Paxson executed subsequent to the date of the deed from John S. Mellon to plaintiff Norman, and the said Norman and Wilson took said conveyances with full knowledge of defendant's claim and with full knowledge that said real estate had been claimed by persons who had acquired title through and by virtue of the sheriff's sale of said real estate made under execution number 300 and more than thirty years after the said circuit court of said St. Louis county had heard and overruled the motion filed by John L. Paxson to set aside the sale of said real estate made by the sheriff of Stoddard county under execution number 300; that by reason of the premises aforesaid, the said plaintiff and the said Joseph T. Wilson and Mercer D. Wilson are and should

be estopped from calling in question the validity of said sheriff's sale. Defendant further answering says that plaintiff's cause of action accrued more than five years prior to the date of the institution of this suit. Wherefore defendant Eastburn prayed the court to declare that he was the owner in·fee-simple of said real estate, and that the plaintiff Norman and defendant Wilson had no legal or equitable title therein, and for general relief.

Defendant Mercer D. Wilson filed a separate answer, but as the finding was in behalf of the defendants Eastburn and Taylor and defendant Mercer Wilson has not perfected his appeal, it is unnecessary to take further account of his answer. The case was tried and resulted in a decree in favor of the defendants George W. Eastburn and George F. Taylor; that they were the owners in fee-simple of all the lands described in the petition, and that the plaintiff and the defendants Wilson had no right, title or interest therein.

The evidence on the part of the plaintiff consisted, first, of a power of attorney from John L. Paxson to John S. Mellon covering the land in controversy and recorded in the deed records of Stoddard county, Missouri. This power of attorney was dated April 18, 1870. Second, a deed conveying the land in controversy from John L. Paxson, by John S. Mellon, attorney in fact, to W. W. Norman, the plaintiff in this case, of date January 11, 1902, and reciting a consideration of one dollar, and conveying altogether 4400 acres of land in Stoddard county, including the land in this suit. It was admitted by all parties to the suit that John L. Paxson was the common source of the title; that the lands in controversy were wild and uncultivated. With this evidence plaintiff rested.

On the part of the defendant Eastburn the following evidence was introduced: First, a deed executed by Robert M. Fraker, sheriff of Stoddard county, Missouri, to John G. Pollard, dated August 1, 1871, re-

corded August 7, 1871, in book M, page 32, of the deed
record of Stoddard county, and conveying the north
half of section 23, township 25, range 12; second, a
deed by Robert Fraker, sheriff of Stoddard county, to
George W. Kitchen, dated August 1, 1871, and re-
corded August 2, 1871, conveying to said Kitchen the
east half of section 24 and the northwest quarter and
the east half of the southeast quarter of section 24,
township 25, range 12. It was admitted that the de-
fendant George W. Eastburn had by mesne convey-
ance acquired all the title that passed through the deeds
executed by Robert Fraker, sheriff of Stoddard county,
to George P. Pollard and George M. Kitchen, dated
August 1, 1871, conveying the lands in controversy.
The plaintiff objected to the foregoing sheriff's deeds
for the reason that the judgments on which the execu-
tion were based were void, and for the reason that
the court rendering the said judgments had no author-
ity in law to render the same. This objection was
overruled and the plaintiff duly excepted. It also ap-
peared that on the 13th of March, 1869, at the Febru-
ary term, 1869, of the St. Louis County Circuit Court,
John L. Paxson recovered a judgment against the
Pacific Mutual Insurance Company for $4162; upon
this judgment executions were issued and a number of
persons were summoned as garnishees, among whom
were Henry Bauer individually, and Henry Bauer and
H. J. Schaefer jointly. On the 10th of January, 1870,
Paxson, the execution plaintiff, having failed to deny
the answer of the garnishees, Bauer and Schaefer, the
circuit court discharged them as garnishees, with an
allowance of fifteen dollars to each at the cost of plain-
tiff, and directed that an execution issue therefor.
On the 25th of May, 1871, Paxson, the execution plain-
tiff, having failed to deny the answer of Henry Bauer,
garnishee, the court made an order discharging him
and allowing him fifteen dollars for answering, and on
motion of the garnishee directed that an execution

issue forthwith.   These allowances to the garnishees
were taxed by the clerk as costs in the garnishment
proceedings against the plaintiff Paxson, and on the
27th of May, 1871, the clerk of the circuit court issued
two executions to the sheriff of Stoddard county, re-
turnable to the October term, 1871, of the St. Louis
County Circuit Court.   These executions were received
by the sheriff, and on the 30th of May, 1871, by virtue
of the same he levied upon and seized the real estate
in controversy, advertised it as the law directed, and
sold it to the highest bidder for cash at the court house
door in Bloomfield, on the first day of August, 1871,
during the sitting of the circuit court.   Deeds were ex-
ecuted, acknowledged and delivered to the purchasers,
Pollard and Kitchen, for the lands so purchased as
aforesaid, and were duly filed for record.   At the date
the land was sold by the sheriff John L. Paxson was
a resident of the State of Alabama, and had been since
December, 1869.   During the years 1867 and 1868 and
a part of 1869 he resided in Stoddard county.   Paxson
did not know that the land in controversy had been
sold under the execution until about the first of Sep-
tember, 1871, some ten days after the sale was made
in August.   He was notified of the sale by his agents,
J. E. Merriman and Company, of which firm John S.
Mellon was a member.   Immediately after learning
of the sale of his land Paxson went to Bloomfield and
employed Mr. H. H. Bedford as his attorney to ex-
amine the sale and make investigations thereabout.
Paxson testified that he knew nothing of the judg-
ments that had been rendered against him in favor
of the garnishees.   He testified that he knew nothing
of any suit to set aside the sale of the land under the
above execution.

In rebuttal plaintiff offered in evidence a certified
copy of the judgment in favor of Henry Bauer, gar-
nishee, against John L. Paxson for the sum of fifteen
dollars of date May 25, 1871, and also a certified copy

of the judgment of January 10, 1870, by the circuit
court of St. Louis county in favor of Bauer and
Schaefer against John L. Paxson and certified copies
of the executions under the above mentioned judg-
ments.

In rebuttal the defendant Eastburn read in evi-
dence a certified copy of a motion filed by John L.
Paxson at the October term, 1871, of the circuit court
of St. Louis county, to set aside the sale of the lands
under the said two executions, assigning among other
reasons that the real estate sought to be sold under
said execution was situated in a county different from
that in which said Paxson and his attorney in fact, and
also his attorney at law, resided, and because the lands
sold were not sold in the legal subdivisions, but in a
lump. A notice of a filing of this motion was duly
served on Pollard and Kitchen, the purchasers. The
attorneys for Paxson and Pollard and Kitchen on the
22d of December, 1871, entered into a stipulation that
affidavits might be taken and used as if they were
depositions, and in pursuance of this stipulation the
affidavits of George W. Kitchen, Robert M. Fraker,
David Crytes and R. T. Carter were filed in the cause,
as was also the deposition of the sheriff, R. M. Fraker.
On Monday, May 19, 1873, this motion to set aside the
sheriff's sale was overruled by the court. A motion
for rehearing was filed and continued until November
10, 1873, at which time it also was overruled. From
this judgment no appeal was taken by John L. Paxson.
Paxson never paid any taxes on the land after 1870,
nor does he seem to have exercised any act of owner-
ship over them. The power of attorney which Paxson
gave John S. Mellon in 1870 does not appear to have
ever been revoked. The defendants Mercer Wilson and
Joseph Wilson defended at the trial, and claimed title
by a quitclaim deed from John L. Paxson and H. H.
Bedford and from said Bedford to Mercer and Joseph
Wilson, both of which deeds were executed after the

deed from Mellon, attorney in fact, to plaintiff, W. W. Norman.

This appeal involves the title to eight hundred and eighty acres of land in Stoddard county. John L. Paxson is the common source of title. Plaintiff deraigns title from Paxson under a power of attorney given by Paxson to John S. Mellon April 18, 1870, and a quitclaim deed executed by Mellon under said power of attorney to plaintiff on the 11th of January, 1902, conveying the land in suit for one dollar, which deed was recorded June 4, 1902.

Defendants deduce title under sheriff's deeds, dated August 1, 1871, based upon a certain judgment rendered by the circuit court of St. Louis county on May 25, 1871, against John L. Paxson, in favor of Henry Bauer, for the sum of forty-two dollars and seventy cents for costs and allowances to said Bauer as garnishee under an execution issued upon a judgment in favor of John L. Paxson against the Pacific Mutual Insurance Company of St. Louis county.

The contest was over the validity of the judgment in favor of Bauer, the garnishee, against Paxson, the plaintiff in the execution, and the sale made of the lands in suit by the sheriff of Stoddard county under that judgment. It will be seen that the plaintiff is assailing a judgment rendered some forty years ago, and a sheriff's sale conducted in 1871. This is a collateral attack upon the judgment and sheriff's sale and deed. The plaintiff therefore assails the judgment and sheriff's sale as void and not merely erroneous. For the purpose of this case plaintiff Norman stands in the shoes of Paxson under whom he claims and with full record notice of defendants' deeds and claim of title.

I. The controlling question in the case is in the contention of the plaintiff that the judgment in favor of Henry Bauer, garnishee of The Pacific Mutual Insurance Company, against John L. Paxson, of date May

25, 1871, and the judgment dated January 10, 1870, in favor of Henry Bauer and H. J. Schaefer, garnishee of The Pacific Mutual Insurance Company, against John L. Paxson, both by the circuit court of St. Louis county, are void, absolutely, because the said court had no authority to render such judgments in favor of a garnishee in a garnishment on execution when the plaintiff failed to recover judgment against the said garnishee. This insistence is based upon the statute law of this State in 1871 when these judgments were rendered. The law in force at that time will be found in the General Statutes of 1865, page 575, sections 20, 21, 22 and 23 (being sections 3454, 3455, 3456 and 3457, Revised Statutes 1899). Plaintiff bases his claim upon the change made in the Garnishment Act of 1846 and 1847 by the revision of 1855. By the Act of 1846 and 1847, it was provided: "If any plaintiff in attachment, or in an execution, shall cause any person to be summoned as garnishee, and shall fail to recover judgment against such garnishee, all the costs attending such garnishment shall be adjudged against such plaintiff; and the court or justice shall also render judgment in favor of such garnishee, against the plaintiff, for a sum sufficient to indemnify him for his time and trouble in attending and answering the interrogatories propounded to him." In the revision of 1855, the words "or in an execution" in the above-quoted statute were omitted. .[R. S. 1855, sec. 74, p. 259.] And inasmuch as the garnishment in the case of Paxson against the Pacific Mutual Insurance Company was upon an execution and not in an attachment, plaintiff insists that the judgments rendered by the circuit court of St. Louis county in that garnishment proceeding in favor of the garnishee, were wholly unauthorized by statute and absolutely void. The plaintiff introduced the said judgments in evidence, from which it appeared that the garnishees answered, and that the plaintiff Paxson therein failed to deny or take any

exceptions to the answers of the garnishees, and there-
upon the court ordered that the garnishees be dis-
charged and the said garnishment dismissed at the
cost of the plaintiff, and that the garnishees be allowed
the sum of fifteen dollars at the costs of the plaintiff,
and that execution should issue therefor.

By section 19, chapter 142, General Statutes of
1865, it was provided: "If the answer of the gar-
nishee be not excepted to or denied in proper time, it
shall be taken to be true and sufficient." And by sec-
tion 23 of the same chapter it was further provided:
"In all cases between the plaintiff and garnishee, the
parties may be adjudged to pay or recover costs, as in
ordinary cases between plaintiff and defendant."

In O'Reilly v. Cleary, 8 Mo. App. l. c. 192, this
question came before the St. Louis Court of Appeals,
and Judge BAKEWELL, speaking for that court, said:
"The court allowed fees to the attorney of the gar-
nishee, and ordered that these fees be taxed as costs.
The appellant contends that attorneys' fees can be
allowed in favor of the garnishee against the plaintiff
only in case of attachment, and not in case of garnish-
ment on execution. The language of the section which
provides for this allowance (Wagner's Stats. 667, sec.
22), is, 'If any plaintiff in attachment shall cause any
person to be summoned as garnishee,' etc. The inten-
tion of the Legislature by the use of this language was
not to make a distinction between the case of garnish-
ment on attachment and garnishment on execution,
as to the allowance of attorneys' fees and other costs
and expenses of the garnishee. No reason for such
distinction can be conceived. The language is used
because garnishment is a common remedy in attach-
ment, and is less seldom resorted to in case of execu-
tion. But a second section of the same act (Wag.
Stats. 664, sec. 2), provides that the proceedings
against and in behalf of the garnishee, subsequent to
service, shall be the same in case of execution and

attachment. The allowance of attorneys' fees, and taxing them as costs, is a proceeding in behalf of the garnishee, within the meaning of the law and the manifest intention of the Legislature.''

Section 2, chapter 142, General Statutes 1865, referred to by Judge BAKEWELL in his decision, provides: ''When a *fieri facias* shall be issued and placed in the hands of an officer for collection, if no sufficient property can be found in the county whereof to levy the amount due on said writ, it shall be the duty of the officer, when directed by the plaintiff, his agent or attorney, to summon garnishees, and with like effect as in case of an original attachment. The service of garnishment in such case, and the subsequent proceedings against and in behalf of the garnishee, shall be the same as in the case of garnishment under an attachment.'' The decision of the Court of Appeals on this question was rendered in 1879 and we have been unable to find any decision in this State either in the courts of appeal or this court overruling or questioning the construction then put upon the Garnishment Act by that court. Section 2 of the Garnishment Act as it stood in 1865 with sections 22 and 23 thereof, we think, was given a reasonable construction by the St. Louis Court of Appeals, and we see no reason for overruling a decision which has been so long accepted and acquiesced in by the bar of the State, and accordingly in our opinion the judgments of the circuit court of St. Louis county in favor of the garnishees and under which the land in suit was sold, were not void but valid judgments. But even if we were of the opinion that the circuit court in those cases misconstrued the Garnishment Act in making the allowances to the garnishees, we should not hold them void, because that court had jurisdiction of all the parties thereto and of the subject-matter of those cases, and its judgments, even though erroneous, are binding upon the parties thereto in a collateral proceeding like the one at bar.

[Driving Park v. Kansas City, 174 Mo. l. c. 442; Chouteau v. Gibson, 76 Mo. 38; Murphy v. De France, 101 Mo. l. c. 159.]

II.   Another ground on which the plaintiff assails the sale of the said lands is that the law was ignored, because the land which was sold was situated in a different county from that wherein the execution debtor Paxson and his attorney in fact Mellon, resided, and no notice of the sale was given either to Paxson or to said Mellon.

At the time this sale of the land was made, section 43, page 645, of the General Statutes of 1865 provided: "When real estate situated in a different county from that in which the defendant in the execution owning such real estate resides, is sought to be sold under an execution in favor of the plaintiff therein, it shall be the duty of the plaintiff to cause a notice, in writing, to be served on the defendant or defendants owning the real estate, if residing in the State, stating the fact of the issuing of the same, how or to what county directed, and to what term of the court said execution is returnable." Now the testimony of Mr. Paxson himself, taken in this case, establishes beyond peradventure that he was a resident of the State of Alabama when the executions were issued and when the sale took place. The statute itself only required a notice of sale to be served on Paxson if he resided in this State, and as his own testimony shows that he was a non-resident of the State, it is perfectly obvious that he was not entitled to this special notice under the statute invoked by the plaintiff. Plaintiff seems to concede that as Mr. Paxson was a non-resident of the State, he was not entitled to this special notice, but he says that Paxson had an attorney in fact in the person of Mr. Mellon, who resided in this State and in a different county from that wherein the land was situated. There is no such qualification in the statute.

It takes no account whatever of attorneys in fact, but requires the notice to be served upon the owner himself, if residing in the State. Moreover, it is well settled in this State, at least, that even if Paxson had been a resident of the State, the failure to give him special notice would have been a mere irregularity, which would not have affected the validity of the sale. [Young v. Schofield, 132 Mo. 668 and cases cited.] This point likewise must be ruled against the plaintiff.

III. It is insisted that the sale was void because the officer failed to subdivide the land and sell the same in legal subdivision, but sold the same in a lump. As already said this is a collateral proceeding and the failure to subdivide the land was an irregularity of which the defendant in that execution alone had the right to take advantage. He did attempt by his motion in the circuit court of St. Louis county to have the sale set aside on that ground, and that court refused to set it aside, and he took no appeal or writ of error from the judgment of the circuit court. It is clear that the plaintiff in this case cannot in this collateral proceeding avoid the sale on the ground that it was sold in a lump. [Lewis v. Whitten, 112 Mo. 318; Bouldin v. Ewart, 63 Mo. 330, and cases cited; Ables v. Webb, 186 Mo. 233.]

IV. As to the objection to the manner of the sale of the lands, that matter was all litigated in the circuit court of St. Louis county on the motion filed by John L. Paxson to set aside the sale on the ground that the land was sold in a lump and that he was not notified of the issuance of the execution to Stoddard county. In view of these facts, the question of the validity of the sale itself must be held to be *res adjudicata*. In answer to this proposition, however, it is suggested by the learned counsel for the plaintiff that the motion filed by Paxson was inappropriate to test

the validity of the sale and correct the irregularity therein, because he says the motion was filed too late. The record furnishes a complete answer to this contention.  The executions were made returnable to the October term, 1871, of the St. Louis County Circuit Court, which was the first term after the executions were issued on May 27, 1871.  This was strictly in accordance with the statute in force at that time. [General Statutes 1865, sec. 4, p. 640.]   The motion was filed by Paxson to set aside the sale at the return term of the execution.  It is too clear for discussion that Paxson's motion to set aside the sale was made at the proper term and in the proper court.  As said by BLACK, J., in Mellier v. Bartlett, 89 Mo. 1. c. 137, ''Every court has the exclusive control of its process, and no other court has a right to interfere with or control it.  [Nelson v. Brown, 23 Mo. 19; Keyte v. Plemmons, 28 Mo. 104; McDonald v. Tiemann, 17 Mo. 603.] '' And the return term of the execution is the term at which the motion should be made.  There can be no doubt of the jurisdiction of the circuit court to entertain Paxson's motion at that term,  The circuit court of Stoddard county had no control over the writ, could not quash it or enjoin its execution, but the circuit court to which the writ was returnable had full authority at the term to which it was made returnable to quash the writ or set aside the proceedings under it.

V.  Finally it is insisted that the circuit court erred in decreeing that the defendants were the owners of the east half of the southwest quarter of section 24, township 25, range 12 east.  As to this assignment, the defendant Eastburn confesses error, but points to the fact that in his answer he disclaimed any interest whatever in this piece of land and consents that the decree should be corrected and amended in so far as the decree vests title in the defendant Eastburn thereto.  He insists, very properly, that having disclaimed

any interest in this eighty acres he should not now be made to suffer because of his unsuccessful effort to eliminate it from the case, and he makes the point that the plaintiff in his motion for new trial did not call the court's attention to the fact that this eighty had been included in the decree of the court by mistake. We have no doubt whatever of the power of this court to so modify the decree as to exclude this eighty acres from the decree under section 866, Revised Statutes 1879, and the decree is therefore affirmed in all matters save and except the finding and vesting of the title to the east half of the southwest quarter of section 24, township 25 of range 12, which by evident inadvertence was included in the decree in favor of the defendant Eastburn.

The decree of the circuit court of Stoddard county is affirmed as modified. *Burgess* and *Fox, JJ.*, concur.